WM. DELK ET AL. v. S. W. PUNCHARD ET AL.

(Case No. 5208.)

1. MISJOINDER, EFFECT OF AGREEMENT ON.— An agreement made by parties liti-
gant, waiving any misjoinder of parties plaintiff, and of causes of action, is
binding, not only on the parties thereto, but on those who may purchase
from the defendants pending the suit.   Citing Delk v. Punchard, 55 Tex.,
306.

2. ADMINISTRATION.—Administration on the estate of a decedent, in 1838, was
properly granted in that county of the republic of Texas where the deceased
resided at the time of his death.

3. ADMINISTRATOR'S BOND — PRESUMPTIONS.— An administrator's bond, executed
in 1838, and having thereon the name of but one surety, was not on that ac-
count void.   Presumptions will be liberally indulged in support of probate
proceedings which occurred at so early a day.

4. GRANT — TRUSTS.— A grant made to two persons, with the following words
added after their names in the grant: "heirs of Joseph Punchard, deceased,"
when it further appeared, from the recitals of the grant, that it was based
upon the immigration to and settlement in Texas of Joseph Punchard, vested
the title in the parties named, in trust, for the benefit of all his heirs.

5. SURVEY.— See opinion for facts deemed sufficient to fix the locality of a sur-
vey, which called to begin at a survey as "Survey No. 2," where there were
two surveys No. 2 in the same county.

6. ARGUMENT OF COUNSEL.— See statement of case for language indulged in by
counsel on the trial of a cause, which, while inexcusable, was not, in view
of the character of the case, deemed sufficient to require a reversal of the
judgment.

APPEAL from Hill.   Tried below before Chas. A. Jennings, Esq.,
Special Judge.

This suit was brought March 1, 1858, in Hill county, by defend-
ants in error against plaintiffs in error, Delk and others, for the
recovery of twenty-four labors of land in Hill county, granted July
6, 1835, to Harriet and Lucretia Punchard, heirs of Joseph Punchard,
deceased, having been received as colonists.   The case is chiefly re-
markable for its longevity, and, in view of the opinion, it is not
deemed important to trace at length its progress, or to give much of
the voluminous record.

Plaintiffs in error pleaded general denial, not guilty, the invalidity
of the Punchard grant, and specially that they were not in posses-
sion of and did not claim or own any land granted to said Harriet
and Lucretia.

On April 17, 1860, Robert McNutt, one of the defendants in error,
was allowed to sever, as he claimed, a distinct portion of the land
and under different title from his co-litigants.   On the same day A.
J. Evans, attorney for plaintiffs in error, Delk et al., filed an agree-
ment with opposing counsel that the plaintiffs were properly joined

in the original petition, and that the cause might proceed and the rights of all the parties be determined in the one suit, thus preventing multiplicity of litigation.

On April 18, 1860, defendants in error, Punchard *et al.*, filed an amendment, stating that they owned in their own right the whole league of land described in the original petition, but in separate tracts or parcels, specifying the parts claimed by each. These tracts had been claimed by them separately since 1846.

In 1865 J. W. McCown, T. P. S. McCown and E. B. McCown made themselves parties defendant.

In 1874 defendants in error filed an amendment stating that Joseph H. Punchard had four other children besides Harriet and Lucretia, and that Harriet and Lucretia held the land as grantees in trust for them, claiming the same as the heirs of Joseph Punchard, deceased; that they were the heirs and vendees of the heirs of Harriet and Lucretia Punchard, and if it should be held that by the grant they became the sole owners thereof, that then they sought a recovery as their heirs, etc.

The case was tried in February, 1883, and judgment was rendered upon a verdict for defendants in error.

In his closing argument, Thos. Harrison, for defendants in error, stated that on a former trial of this cause the witness W. M. Vaughan had false field-notes, and made an *ex parte* survey of the land in controversy, and the same would have been imposed upon the jury by the evidence of said Vaughan but from the fact that he, Harrison, detected and exposed the same. While he was saying this, counsel for plaintiffs in error requested permission to interrupt him, and excepted to such language, and appealed to the court to prevent said Harrison from making any allusion to any former trial and to keep within the evidence of the trial then in progress. The court then admonished him to confine himself to the evidence, but afterwards Harrison said to the jury, "false field-notes have been used by the witness Vaughan in making his survey, and the same would have so gone before the jury if it had not been that I had detected it, and the same evidence was now being used on this trial. By such evidence, gentlemen, the defendants are trying to get our land."

As soon as said Harrison began this repetition, counsel for plaintiffs in error excepted again and repeated the exception, and the court again informed said Harrison that he must confine himself to the record. Counsel for plaintiffs in error reserved a bill of exceptions because said language of said Harrison in his closing argu-

ment was prejudicial to plaintiffs in error, not warranted by the evidence and contrary to law.

*Herring & Kelley* and *Anderson*, for appellants, on alleged error in admitting the agreement as to parties, cited: Mitchell *v.* Cotton, 3 Fla., 160; Booth *v.* Hail, 6 Md., 4; Hows *v.* Lawrence, 2 Zab. (N. J.), 106; Weeks on Att'ys at Law, secs. 219, 228, 229; 1 Greenl. Ev., secs. 106, 205; Mussina *v.* Goldthwaite, 34 Tex., 131; Adams *v.* Roller, 35 Tex., 711; Merritt *v.* Clow, 2 Tex., 588; Holker *v.* Parker, 7 Cranch, 436.

That the grant vested the title absolutely in the parties named therein, they cited: Gayle *v.* Ennis, 1 Tex., 184; Hall *v.* Pearman, 20 Tex., 170; Const. 1836, sec. 10 of Gen. Provisions, Hart. Dig., p. 38; Kennedy *v.* State, 11 Tex., 109; Babb *v.* Carroll, 21 Tex., 765; Republic *v.* Skidmore, 2 Tex., 264–5; Linn *v.* State, 2 Tex., 317.

That the misconduct of appellees' counsel in his closing argument required a reversal, they cited: Tucker *v.* Henniker, 41 N. H., 317; Brown *v.* Swineford, 44 Wis., 232; Thompson *v.* State, 43 Tex., 268; Weeks on Attorneys, sec. 112; Willis *v.* McNeill, 57 Tex., 474; G., H. & S. A. R'y Co. *v.* Marsden, Tex. Ct. App. Civil Cases, p. 560.

That it will be presumed that partition, as a part of the proceedings of administration which was begun in 1838, was unauthorized when the partition was applied for in 1846, citing: Marks *v.* Hill, 46 Tex., 350; Hurt *v.* Horton, 12 Tex., 285; Flores *v.* Howth, 5 Tex., 329; Hart. Dig., art. 1026; Blair *v.* Cisneros, 10 Tex., 34; Duncan *v.* Veal, 49 Tex., 603.

*Upshaw & Harrison*, for appellees, that the agreement of counsel as to parties was valid, cited: Punchard *v.* Delk, 55 Tex., 304; Dunman *v.* Hartwell, 9 Tex., 495; Hancock *v.* Winans, 20 Tex., 320; Rorer on Judicial Sales, 33 *et seq.;* 2 Starkie, Ev., 31, note O; 365, note H.

That the partition made by the probate court was binding, they cited: Punchard *v.* Delk, 55 Tex., 394; Ellis *v.* Rhone, 17 Tex., 131; Hart. Dig., arts. 1106, 1084, page 348; Littlefield *v.* Tinsley, 20 Tex., 356; Stewart *v.* Baker, 17 Tex., 417; Millican *v.* Millican, 24 Tex., 426; Grassmeyer *v.* Beeson, 18 Tex., 758.

That it could not be impeached collaterally nor by strangers, the injured party acquiescing, they cited: Grassmeyer *v.* Beeson, 18 Tex., 753; Sawyer *v.* Boyle, 21 Tex., 38.

That it was conclusive of the heirship of the parties, they cited: Burdett *v.* Silsbee, 15 Tex., 616; Box *v.* Lawrence, 14 Tex., 555.

The *locus in quo* of the Punchard grant was established, citing: Edwards *v.* Peoples, Dallam, 359; Willis *v.* Lewis, 28 Tex., 185; Ward *v.* Bledsoe, 32 Tex., 251; Tarkinton *v.* Broussard, 51 Tex., 553; Fulton *v.* Craddock, Dallam, 458; Duggan *v.* Cole, 2 Tex., 381; Austin *v.* Talk, 26 Tex., 127.

WATTS, J. COM. APP.— When this case was before the court on former appeal, it was held that the agreement of April 17, 1860, waiving any misjoinder of parties plaintiff and causes of action, was not only binding upon the original parties, but also upon those who purchased from the original defendants pending the suit, and who have since made themselves parties to the suit. Punchard *v.* Delk, 55 Tex., 306. We have seen no good reason to doubt the correctness of that holding. Nor does the record now before the court present the question in any more favorable aspect, for the plaintiffs in error, than as presented by the former record.

Our opinion is that the court did not err in admitting the agreement as evidence.

Plaintiffs in error propound sixteen propositions under their second assignment of error. That assignment is to the effect that the court erred in admitting the certified transcript from the county court of Austin county, showing the grant of letters of administration upon the estate of Joseph H. Punchard, deceased, and also the partition of the Punchard grant of land amongst his heirs.

The administration was opened in March, 1838, at a time when all proceedings relative to successions were regulated and governed agreeably to the principles and laws in similar cases in Louisiana. Hartley's Digest, art. 983.

It appears that Punchard was at the time of his death a resident citizen of Austin county, and therefore the succession was properly opened in that county. Civil Code of Louisiana (1838), art. 929, p. 139.

While it is claimed that the proceedings had in the succession were void, because there was but one surety on the administrator's bond, no authority to that effect is cited by counsel. In art. 1034 of the Civil Code of Louisiana, then in force, it is provided that "the judge of the place where the succession is opened shall name an administrator to manage the property thereof, and oblige him to give good and sufficient security for the fidelity of his administration." But we have not found any law of Louisiana, then in force, which required more than one surety on an administrator's bond.

It may be admitted that the proceedings had in the succession, as

exhibited by the certified transcript, were very irregular. But there is nothing shown which would render them void. Owing to the loose and irregular manner in which probate business was then conducted, and the manner in which the records of the same were kept, great liberality in presumptions will be indulged in support of such proceedings. Robertson v. Johnson, 57 Tex., 66.

Plaintiffs in error claim under the grant made to Peter Fleming, March 15, 1835; while the defendants in error claim under the Punchard grant made July 6, 1835, the latter claiming as heirs and vendees of heirs of Punchard.

It seems that all the parties claiming under the Punchard grant are now, and have been for a long time, acquiescing in and acting upon the partition as made by the county court of Austin county. So that it is a matter of but little practical importance to plaintiffs in error, whether that proceeding was regular or irregular; and the objections urged against it, under the circumstances of this case, are technical and without merit. For it appears from the evidence that the parties to whom the several portions of the Punchard grant were allotted in the partition constituted the only heirs of Joseph H. Punchard, deceased. Some of these have long since conveyed to third parties all interest they had by and through the partition, while the others are before the court asserting title through that partition. All parties at interest have, from the first, not only acquiesced in, but have also acted upon and recognized the partition as binding. It would seem that plaintiffs in error, who claim no right to or interest through the Punchard grant, would not be heard to impeach that partition in this collateral proceeding. Grassmeyer v. Beeson, 18 Tex., 753; Sawyer v. Boyle, 21 Tex., 38.

It also appears from the recitals in the grant, that while it was issued to "Harriet and Lucretia Punchard, heirs of Joseph Punchard, deceased," that in fact it was based upon the immigration to and settlement in the colony of Joseph Punchard, and the proofs made that he was the head of a family and possessed the other qualifications required by the colonization laws then in force.

Under the facts and circumstances of the case, the court below did not err in construing the grant as made in trust for the heirs of Joseph Punchard, deceased, and as inuring to them.

That was the construction that seems to have been given to the grant by the court in making the partition, and acquiesced in by the heirs. The consideration for the grant was the settlement of Punchard in the colony, and without doubt his heirs were equally interested in the land secured by that settlement.

It is claimed by plaintiffs in error that the Fleming grant, through which they derive title, embraces and includes the land lying between the Langford Fitzgerald and F. M. Weathered surveys, as shown upon the sketch map, following page 82 of the transcript; while the defendants in error assert that the Punchard includes that land, and that the Peter Fleming grant in situated in McLennan county, opposite the city of Waco. This is the material question involved in the controversy. The Peter Fleming grant was made March 15, 1835, and the grant to Punchard was extended July 6, 1835; the former is the senior and the latter the junior grant. The Peter Fleming grant, for its beginning, calls for "the upper corner of League No. 2," but does not call for any bearing trees or other matters of identification at that corner, nor does it give the name of the grantee of "League No. 2," and also calls for a front on the Brazos river, without giving the meanders; while the Punchard grant calls for its beginning "at the upper corner of League No. 2, above the mouth of Childress creek, at a stake whence an oak fourteen inches in diameter bears south sixty-three degrees east twenty-nine varas, and a black oak six inches in diameter bears north seventy-three degrees east twenty-four and one-half varas. Thence up the river," etc.

The Langford Fitzgerald was surveyed by J. B. Chance, April 18, 1835, and calls for its beginning corner at "a stake on the east bank of the river Brazos one thousand two hundred and fifty varas above the said Towash village, it being Montgomery B. Shackleford's west corner of quarter No. 1," etc. The upper corner on the river is called for as follows: "A stake from which a post oak fourteen inches in diameter bears south sixty-three degrees east distant twenty-nine varas; also a black jack six inches in diameter bears north seventy-eight degrees east distant twenty-four and one-half varas." Now that is claimed by plaintiffs in error as the beginning corner of the Fleming grant, but defendants in error deny that assertion, and claim that it is the beginning corner of the Punchard grant.

As the Fleming is the prior grant, if the evidence adduced was such as to establish the claim of plaintiffs in error, and show that the land in controversy was in fact included in that grant, the controversy would be concluded. Thus it becomes important to consider the evidence, with respect to the true location of that grant.

It appears that James A. McCullough made the John Harmon survey, March 12, 1835, and which was designated as No. 2; also the Peter Fleming, March 15, 1835; and the Wm. Dillard, March 25, 1835. That the Harmon and Dillard surveys are situated on the

east side of the Brazos river, and opposite the city of Waco, seems not to be questioned. And that the Shackleford, Fitzgerald and Weathered are on the east side of the Brazos river in Hill county, at least twenty miles above the city of Waco, in McLennan county, is also conceded. The record shows that the Shackleford, Fitzgerald and Punchard were all surveyed by J. B. Chance.

In view of the fact that there had been no survey of the Fitzgerald league made, at the time the Fleming survey was made by McCullough, it is improbable to suppose that he would have called for the upper corner of the former as the beginning corner of the latter.

The call is, "beginning at the upper corner of League No. 2." There is no descriptive matter given, by which to identify that as the corner of the Fitzgerald, and it would be equally applicable to any other league similarly located on the east side of the Brazos, anywhere in that section of the country, and which had been designated as "League No. 2."

It appears that the call would be as applicable to the Harmon league, which was designated as No. 2, as it would have been to the Fitzgerald corner.

That the Harmon had been surveyed but three days before the Fleming, and that by the same surveyor, who it seems had designated the Harmon as "League No. 2," is certainly cogent evidence tending to show that the call in the Fleming was for the upper corner of the Harmon and not the Fitzgerald. And notwithstanding there is some evidence in the record tending to the opposite conclusion, in which there is conflict and contrariety, however, when all the facts and circumstances disclosed by the record have been fully and dispassionately considered, the mind is impelled to the conclusion that the finding of the jury, to the effect that the land in controversy is not included in the Fleming grant, is abundantly sustained by the great preponderance of the evidence. Our opinion is that the jury could not rightfully have found otherwise. While, on the other hand, a careful examination of the evidence leaves no doubt in our minds but that the jury correctly found that the Punchard grant embraced the land in controversy.

In view of these conclusions, it is not believed necessary for us to discuss the supposed errors of the court in giving and refusing instructions to the jury.

Such a violation of the rules of court in the closing argument as that stated in the bill of exceptions is inexcusable. However, considering the circumstances in connection with the character of the

case, we are of the opinion that the judgment ought not to be reversed alone upon that ground. It should be remarked that, in such cases, the trial court ought promptly to interfere and repress all such violations of the rules.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted April 24, 1885.]