MITCHNER, *Appellant*, v. HOLMES.

Division Two, June 27, 1893.

1. **Land:** CONTRACT TO PURCHASE: MARKETABLE TITLE. A purchaser is entitled to a marketable title to the land for which he has bargained.

2. ———: ———: TITLE, IMMATERIAL DEFECTS IN. A woman and her minor daughter contracted to sell land to plaintiff agreeing that unless a good title was offered the contract should be void. A deed was tendered which plaintiff refused to accept because of certain errors in the partition of the land in question on the death of a person through whom defendant claimed. The evidence showed that the commissioners in partition filed their report describing the shares allotted to each claimant by metes and bounds and also filed a plat showing the division. An error was made in describing one share in the report by so stating the starting point that the land was not correctly described but by the plat the share was rightly described. *Held,* in an action by the vendee to recover his earnest money that he could not rightly object to the title tendered on the foregoing ground, it appearing that the court approved both the report and the plat and founded its decree on both and that the latter had been entered fifty years and none of the parties to the partition suit or their heirs had made claim to the land.

3. ———: ———: ———: CURATOR'S DEED. Where it appears that a person was duly appointed curatrix of a minor and filed her bond as such, an objection to proceedings by her for the sale of the land on the ground that the petition therein described her as guardian instead of curatrix will not be sustained, the order of the approval of the sale reciting that "now comes said curator or guardian and submits her report of sale."

4. Deed: ACKNOWLEDGMENT. An objection to the validity of the acknowledgment to a deed attested by the notary as "given under hand," on the ground that the notary omitted to affix his seal is not well taken where the instrument offered in evidence was duly admitted to record.

5. Cloud on Title: NON-RESIDENT: PUBLICATION. A non-resident defendant in an action to remove a cloud on the title to land may be served by publication.

6. Abandonment: JURY: INSTRUCTIONS. Abandonment of a contract is a question for the jury under proper instructions.

7. Misjoinder of Causes of Action, Objection to. The objection that a petition unites two inconsistent causes of action in one count should be made by demurrer or motion to elect.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Dobson, McCune & Doggett* for appellant.

(1) That the title offered by the sellers, as shown by the abstract as certified by Schueler & Company, under date of March 24, 1888, on page 82 of the abstract, was not such a good and marketable title as the sellers were bound by their contract to furnish, see Pomeroy on Contracts, p. 278, sec. 198 to 203. *Luckett v. Williamson*, 31 Mo. 54; *Taylor v. Williams*, 45 Mo. 80; *Mastin v. Grimes*, 88 Mo. 478; *Hymers v. Branch*, 6 Mo. App. 511; Fry on Specific Performance [3 Ed.], sec. 573-579; *Brooklyn v. Armstrong*, 45 N. Y. 235; *Jordon v. Poillon*, 77 N. Y. 518; *Dobbs v. Norcross*, 24 N. J. Eq. 327; *Smith v. Turner*, 50 Ind. 357; *Middleton*

*v. Fonda*, 25 Cal. 76; *Tevis v. Richardson*, 25 Cal. 76; *Barnett v. Higgins*, 4 Dana, 565; 3 Parsons on Contracts [7 Ed.], p. 381-82. (2) The appellant alleges in his petition that the trade, or contract, had by mutual agreement been declared off, and that the respondent had agreed to return the $1,000 paid on the contract, and also to pay for valuable improvements done on the land. The answer to this is simply a general denial. In view of the issues thus presented, the respondent attempted, after denying that there had been any agreement made calling the trade off, as alleged in the petition, to shield herself behind the claim that no deed had actually been tendered by the appellant in pursuance of the agreement she denied the existence of. Instructions 3 and 4 of the respondent raised a false issue, and one not justified by the pleadings. *Glass v. Gelvin*, 80 Mo. 297; *Riggins v. Railroad*, 73 Mo. 598; *Wade v. Hardy*, 75 Mo. 394; *Bank v. Murdock*, 67 Mo. 70; *Bank v. Armstrong*, 62 Mo. 59; *Tatum v. Brooker*, 51 Mo. 148; *Reynolds v. Reynolds*, 45 Mo. App. 642; *Laraway v. Perkins*, 10 N. Y. 371; *Cole v. Soulsby*, 21 Cal. 47; *Taft v. Kessel*, 16 Wis. 273; *Vorwerk v. Nolte* (Cal.), 24 Pac. Rep. 840. (3) The evidence that the trade had been declared off, as alleged in appellant's petition, was overwhelmingly in favor of appellant. Notwithstanding the denial in her answer, the evidence of the respondent amply sustains the allegations in the petition that the trade was declared off, and the court in refusing to set aside the verdict of the jury and grant a new trial, wrought manifest injustice, and it is therefore the duty of this court to interfere. *Whitsett v. Ramsey*, 79 Mo. 250; *Spohn v. Railroad*, 87 Mo. 74; *Garrett v. Greenwood*, 92 Mo. 120; *Gas Light Co. v. Ins. Co.*, 33 Mo. App. 348; *Henderson v. Railroad*, 36 Mo. App. 109.

*W. C. Scarritt* for respondent.

(1) The defendant has a good title to the property described in the contract, and appellant could not refuse to carry out said contract on the grounds mentioned in his petition; hence, instruction numbered 2 asked by the appellant was rightly refused, and instructions numbered 1, 2 and 5 asked by the respondent were properly given. (2) Where land is described by reference to certain degrees of latitude, and also to a map, the degrees of latitude in case of a conflict between the two descriptions will be rejected. 2 Devlin on Deeds, sec. 1020, p. 335; *Mayo v. Mazeaux*, 38 Cal. 442. (3) Description by lot should prevail over that by courses and distances. The designation of the lot must be regarded as the prominent object or monument. And where there is uncertainty, the monument must prevail over the description by courses and distances. *Rutherford v. Tracy*, 48 Mo. 325, and cases cited; *Cooley v. Warren*, 53 Mo. 169; *Brown v. Huger*, 21 How. 306; 2 Devlin on Deeds, sec. 1029; *Shewalter v. Pirner*, 55 Mo. 232; *Railroad v. Green*, 68 Mo. 177. (4) Where the deed contains two descriptions of the land conveyed, but between which there is a repugnancy, that description which the whole instrument shows best expresses the intention of the parties must control. 2 Devlin on Deeds, sec. 1038; *Moore v. Massim*, 37 Cal. 432; *Driscoll v. Green*, 59 N. H. 101; *Wade v. Deray*, 50 Cal. 376. (5) Where one sells a lot by its number as laid out on a recorded plat, and in giving a further description misstates the boundary line thereof, the monument will prevail, and the further false description be rejected. *Railroad v. Skinner*, 9 Mo. App. 198; *Rutherford v. Tracy*, 48 Mo. 329. Grants are to be most strongly construed in favor of

grantees.   If there is a conflict in the descriptive words, the construction most favorable to the grantee will be adopted. *Evans v. Temple*, 35 Mo. 494. (6) The intention of the parties as gathered from the whole instrument, and not particular words, must govern. *Gibson v. Bogy*, 28 Mo. 478; *Jamison v. Fopiano*, 48 Mo. 194. (7) A deed for a description of the land conveyed may refer to another deed or to a plat, and the deed or plat to which reference is thus made is considered as incorporated in the deed itself. *Dolde v. Vodika*, 49 Mo. 100; *Railroad v. Skinner*, 9 Mo. App. 198; 2 Devlin on Deeds, sec. 1020, and cases cited. (8) The third objection to defendant's title, as shown in his petition, that Mrs. Simpson makes the sale and deed as guardian, instead of curatrix, is not well taken. *Exendine v. Morris*, 8 Mo. App. 386; *Exendine v. Morris*, 76 Mo. 418; *Henry v. McKerlie*, 78 Mo. 418, and cases cited. (9) In a partition suit service, on a non-resident by publication is good. Revised Statutes, 1889, sec. 2029; *Payne v. Lott*, 90 Mo. 677; *Rumfelt v. O'Brien*, 57 Mo. 569.

GANTT, P. J.—On the eighth day of September, 1887, Mrs. Lydia A. Holmes, and her daughter, Laura Holmes, claiming to be the owners of five and eighty-five one hundredths acres of land in Kansas City, Missouri, entered into a contract for the sale thereof to Frank B. Mitchner, for $44,000, to be paid as follows: One thousand (1,000) dollars at signing of this contract, the receipt whereof is hereby acknowledged by the sellers and which is deposited with William Holmes as part of the consideration of the sale, and the balance whereof is to be payable in the following manner, to-wit: Thirteen thousand, six hundred and sixty-six dollars and sixty-six cents ($13,666.66) on delivery of deed, about November 15, 1887, and the balance of

purchase money paid in notes due in two or three years from delivery of deed, and to be secured by deed of trust on each lot separately to the amount of thirty dollars ($30) per front foot on the corner lot on Chestnut and Prospect avenues, and twenty-four (24) dollars per front foot on the balance of lots fronting said avenues, and the remainder of the purchase money, for an amount on each lot on Montgall avenue as will make up the remainder of the purchase money; all notes to bear interest at eight per cent. per annum, interest payable semi-annually.

"The seller is to furnish, within ten days of November 1, 1887, hereof, a complete abstract of title to said property from government, and such certificates as may be required by the buyer as to judgments and mechanic's liens thereon, from various courts in which judgments would be liens thereon.

"The seller, also, to pay all state, county and municipal (including special) taxes, now a lien on said property, excepting the taxes for the year 1888, and thereafter, which are to be assumed and paid by the buyer.

"If, upon examination, it is found that the seller has a good title in fee to said property, they are to execute and deliver to the buyer a general warranty deed thereto by Lydia A. Holmes, to one-half of said tract, a guardian deed by Julia Simpson to the other one-half of the land, founded on regular proceedings in the probate court of Jackson county, properly executed, and free and clear of all liens and incumbrances whatsoever, except only such as are to be assumed by the buyer hereunder, and concurrently therewith, and as a part of the same transaction; the buyer is to pay the balance, if any, of the said cash payment, and to deliver to the seller the notes, deed of trust and policy of insurance hereinbefore provided for.

Mitchner v. Holmes.

"If the title is found to be defective, the seller is to have the defects in it rectified within a reasonable time, which is not to exceed thirty days from the date at which transfer of property is to be consummated under this contract; but in case such defects in the title cannot be cured or remedied within that period, and no extension of time is had between the parties, this contract is to be null and void, and the said sum of one thousand (1,000) dollars, deposited as aforesaid, is to be returned to the buyer.

"If, though, the title is good and the sellers have kept their part of this contract, the buyer fails to comply with its requirements on his part, within twenty days after being furnished with the abstract of title, then the aforesaid deposit of one thousand (1,000) dollars shall be forfeited to the seller; but, for this cause, this contract shall not cease to be operative between the parties hereto. It is understood and agreed that the grantee is to assume all expense of executing and recording the deeds of trust, except one of them, and also assume any expense in opening Montgall avenue.

"Time is, and shall be, the essence of this contract; and the sale and the transfer of said property, according to the provisions hereof, shall be consummated within thirty days from date as above.

"In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written.

"Wm. Holmes, [seal]
"*Agent for Lydia Holmes and Julia E. Simpson.*
"Frank B. Mitchner. [seal]"

"The title to the within real estate being found to be defective by the counsel for the buyer and it being impossible to rectify the same within thirty days from the date at which the transfer of the property was to

be consummated, the time within which said defects are to be rectified, is hereby extended by mutual consent until the first day of April, 1888, but not to continue longer except by the written consent of the parties hereto.

"WM. HOLMES, [SEAL]
"*Agent for Lydia A. Holmes and Julia E. Simpson.*
"FRANK MITCHNER. [SEAL]"

An abstract of title by Messrs. Schueler & Company was submitted to Mitchner, and by him to his counsel, who gave him the following opinion:

"KANSAS CITY, MO., Nov. 8, 1887.
"*Frank Mitchner, Esq., City.*

"DEAR SIR:—In the examination of the title to five and eighty-five hundredths acres of land in the southwest quarter of the northwest quarter of section 10, township 49, range 33, we note the following objections:

"*First.* In the partition proceedings of the estate of Jones Lockridge, the commissioners appointed to divide the lands among the heirs, manifestly made a mistake in allotting to Thomas J. Lockridge his portion, in leaving a strip of about fifteen acres between the land allotted to John Lockridge and that allotted to Thomas J. Lockridge, which is not allotted to anyone. The land which you are about to purchase lies in the west end of this strip. We suggest, therefore, that you obtain quitclaim deeds from all the Lockridge heirs, as to this piece of land.

"*Second.* In the deed from Joseph Journey to Robert Hudgens dated July 26, 1866, recorded in book 47, at page 270, the notary failed to affixed his seal to the certificate of acknowledgment. Quitclaim deeds have been obtained from some of the heirs of Joseph Journey, but the following have not made quitclaim deeds:

"(1) James H. Lucas, who married Martha Jane Journey, daughter of Joseph Journey. Said Martha Jane is now dead, but left surviving her James H. Lucas, her husband, Lillie Lucas, Elwood Lucas and Russell Lucas, all of whom should make quitclaim deeds to the lands above described.

"(2) Lawrence Journey, a son of Joseph Journey, who is now in the insane asylum in Missouri.

"(3) Noah Journey, a son of Joseph Journey, now living in Carrollton, Missouri.

"(4) Paul Corder, Jr., Lucy E. Corder, John Corder and Robert Corder, children of Ellen Corder, formerly Ellen Boyd, who married Paul K. Corder. Said Ellen Corder was a daughter of Nancy Boyd, who was a daughter of Joseph Journey, and intermarried with William Boyd, both of whom are now dead.

"(5) Mary Journey, widow of John Journey, deceased, a son of Joseph Journey, and her children, Catherine E. Journey, who intermarried with John Hussey, and Willaim D. Journey.

"*Third.* In the deed from Robert Hudgens to Charles B. Warren dated February 11, 1869, there was nothing to show that he was a single man when he made the deed. Proof should be made that Hudgens was single at the date of said deed.

"*Fourth.* The deed of trust from Aylvin A. Holmes to Grant & Aull dated January 2, 1883, is not properly released of record. A quitclaim deed should be secured from Grant & Aull properly releasing said deed of trust.

"*Fifth.* With the above exceptions we find the title, according to the abstract furnished us, to be in Laura Holmes, subject to the dower of Lydia A. Holmes, widow of Aylvin Holmes.

"Yours very truly,
"D. D. & T."

Efforts were made by Judge Holmes, representing the vendors, to meet all of the above objections and the abstract as corrected was, about April 1, 1888, again submitted to the counsel of Mr. Mitchner. And after careful examination they gave this additional opinion:

"KANSAS CITY, Mo., April 14, 1888.
"*Frank Mitchner, Esq., City.*

"DEAR SIR:—Upon a re-examination of the title to the five and eighty-five hundredths acres of land in the southwest quarter of the northwest quarter of section 10–49–33, as continued by Schueler & Co., since our opinion to you of November 8, 1887, and certified by Schueler & Co., under date.

"*First.* There are several little defects in the proceedings in the suits against the Lockridge heirs and the Journey heirs of a minor nature, which we presume are clerical and can be corrected, and which it is not worth while to specify particularly in this opinion, except that the decrees in each case are not exactly such as we would like to have them, especially in the suit against the Lockridge heirs. The decree does not undertake to divest the title out of the Lockridge heirs and vest it in the plaintiffs, as it should do, but it is more in the nature of a bar against the Lockridge heirs from asserting any title or claim to the property. And three of the Lockridge heirs are simply notified by publication—they being non-residents of this state. Those three are Dudley S. Lockridge, Jones J. Lockridge and Henry S. Ranson. We will require quitclaim deeds from these three heirs.

"*Second.* The abstract does not show that Thomas J. Lockridge ever made a will, though we knew that fact otherwise, and have taken the trouble to examine the will, by which, after several specific devises, the testator devises all his remaining property to his

children for life and his grandchildren in fee. The abstract as corrected shows only a quitclaim deed from the two children of Thomas J. Lockridge, viz.: Nannie J. Bell and Charles R. Lockridge; and the grandchildren are not made parties to the partition proceeding, as they should have been. It would be but little trouble to get a decree against the grandchildren, and we advise that it be done. These matters are important, as they substantially affect the title to the property.

"*Third.* In the suit against the Journey heirs, we observe that there were four of them, viz: James H. Lucas, Lillie Lucas, Elwood Lucas and Russell Lucas, who were notified by publication and served with process outside of this state. We have made a careful examination of the decisions in this state upon that point, and are of the opinion that such a proceeding against non-residents by publication is not good; but as the defect sought to be cured in that case is merely a technical one, and was only had for prudential reasons, we shall not insist on this objection, except we think that you ought to require some indemnity against any trouble or expense that you may be put to hereafter by reason of the claim of these four heirs.

"All the Lockridge and Journey heirs in this state were served personally, and the decrees against them are substantially good, but any of those who are adults have three years from the date of the decrees within which to prosecute writs of error, and the minors have three years after becoming of age within which to prosecute writs of error. Hence we think you should be indemnified against loss or damage or expense occasioned by such writs of error, or appeals if there should be any.

"One other matter we will call your attention to, which we presume can properly be fixed in the probate

court, and that is the curatrix of Laura Holmes, minor, makes the sale and deed as guardian instead of curatrix. This can be properly corrected by taking the proper steps in the probate court.

"Very truly yours,

"DOBSON, DOUGLASS & TRIMBLE."

Mr. Dobson, of the firm, testified: "I delivered the letter to either Mr. Mitchner or Mr. Thayer, and had a communication with Judge Holmes about it. I had a conversation with Judge Holmes at his (Judge Holmes') home. Judge Holmes was ill and in bed at the time, and Mr. Thayer and I went to see him and had some talk with him in his bed about it. Judge Holmes is now dead. I had a talk with Judge Holmes and also with Mr. W. J. Ward, and we did not agree very well about the legal propositions."

On the fifteenth of June, 1888, the same firm gave Norton Thayer an opinion, in which they required the following things to be done:

"1. Procure quitclaims from Dudley S. Lockridge, Jones J. Lockridge and Henry S. Ranson.

"2. Get a decree against the minor grandchildren of Thomas J. Lockridge of the same character obtained against his children and brothers.

"3. Correct the papers in the probate court and the deed of Mrs. Simpson, so as to show that she was curatrix, instead of guardian and curatrix.

"4. Procure a bond of indemnity to protect you against appeals by the Journey heirs who do not quitclaim, and against the claim of the Lucas children, who were notified by process served outside of this state."

Thayer apparently represented both sides to this controversy in the sale. He procured this last letter on his own account. It does not appear that Judge Holmes or Mr. Ward, who represented the minor's interest, either, at that time were making any further

efforts to satisfy plaintiff's attorneys of the validity of Mrs. Holmes' title.

Plaintiff, in his petition, after stating the substance of the contract, alleges that the four things named in his letter to Thayer were necessary to perfect said title, but that defendant failed and refused to do any of the things so required, and has failed to convey to plaintiff such title as the contract calls for.

It is also alleged in the petition that plaintiff has frequently demanded payment of the one thousand (1,000) dollars sued for; and that the contract was long since, by mutual agreement, abandoned and declared off so far as the execution of the same on the part of the plaintiff was concerned. That the defendant agreed and promised to return to plaintiff the cash paid out by him.

Defendant admits the execution of the contract, but denies every other allegation contained in the petition. She also sets up a counterclaim against plaintiff which was, after verdict, abandoned.

Plaintiff, for reply, filed a general denial to each of the counts and counterclaim of defendant.

After Judge Holmes' death Mrs. Holmes had correspondence and interviews with the plaintiff about this matter. Judge Holmes, in his effort to carry out the trade, had filed a petition in the probate court in behalf of Mrs. Simpson, the curatrix of Laura Holmes, for the sale of her share of the land in question, and had obtained the order and reported the sale and had it approved. When the trade was abandoned, Mrs. Holmes and Mrs. Simpson were anxious to get rid of this record entry, and applied to Mitchner to release by quitclaim. Mrs. Holmes says that to effect this she offered to pay him something. She finally offered him a lot to quitclaim. All their negotiations fell through, and the result was this suit by Mitchner and one by the

guardian of Laura against Mitchner.   In the latter case, the court allowed Mitchner to recover the payment of $500,—Laura's half of the first payment.

The admitted source of title to this land was Jones Lockridge.   He died in 1836, leaving as his heirs, a daughter, Mrs. Amanda Tally and four sons, Dudley S. Lockridge, Jones H. Lockridge, Thomas Lockridge and John H. Lockridge, and a widow, Rachel Lockridge.   In 1840, John Lockridge began a partition suit of his father's lands in Jackson county against the widow and brothers and sister.   Service was had and a decree of partition obtained, in which one-third for life was adjudged to the widow and one-fifth to each of the children in the residue in fee.   Commissioners were appointed and filed their report.   To Thomas Lockridge they assigned seventy-two acres of land, in the following manner.   "They did allot to Thomas Lockridge, one of the heirs of said deceased, the following described tract, piece or parcel of land situate, lying and being in the county of Jackson and state of Missouri, known and designated by the following description and boundaries beginning at a point at the northeast corner of the southwest quarter of section 10, of township number 49, in range number 33, and running thence due south thirty-six chains, thence due west eighty chains, thence due north thirty-six chains, thence east eighty chains to the place of beginning, containing seventy-two acres."

With this report they filed a plat showing the land alloted to each of the five children and the widow. The following plat, except the dotted lines, is the one identified by witness Judge C. L. Dobson as having been obtained by him from the files of the circuit clerk's office in Independence, among the partition papers in that case:

Mitchner v. Holmes.

Measurements made with a two-perch pole or thirty-three feet chain.

In the partition suit, the decree contained this provision:

"Which said report and *plat* are by the court approved and the court doth order that a certified copy of said report and plat be duly recorded in the recorder's office of Jackson county, Missouri, and when so recorded shall operate as a deed in fee simple to said legal representatives of said Jones Lockridge, deceased."

It will be seen at once that if we begin at the south line of John H. Lockridge's seventy-two acres as marked out by the plat to describe Thos. J. Lockridge's seventy-two acres, we must start at a point four chains north of the center of said section instead of commencing at said center, and it so happens that the tract of five and eighty-five one hundredths acres in question here, falls in the west end of a tract formed, by running two parallel lines, one commencing at said center and running to the west line of said section, and the other, beginning four chains north of said center and running west to said west line of said section. So that the main objection to Mrs. Holmes' title is to be resolved for or against her accordingly as we construe this decree.

If the written language of the commissioners alone is taken, her land was not assigned to Thomas Lockridge but remained in the heirs-at-law of Jones Lockridge; *but if the accompanying plat made and filed by the commissioners shall control*, it was allotted to Thomas Lockridge. There was evidence on part of plaintiff tending to show that the trade was mutually abandoned, and that Mrs. Holmes agreed to refund the earnest money and also to pay for the improvements made by plaintiff on the property, and there was evidence by defendant that no such agreement was made, and no deed tendered to the minor's part.

The court gave the following instructions for plaintiff:

"1. If the jury believe from the evidence that it was mutally agreed between the plaintiff and defendant, before the bringing of this suit, that the contract between them, read in evidence, should be declared off, or at an end, so far as it required the defendant to convey to plaintiff a good title to the lands described in the contract, and that the defendant agreed to repay to the plaintiff the one thousand dollars paid by him on the contract, and in addition thereto the value of any work done, or improvements made upon the land, of value to the defendant, and the plaintiff agreed to reconvey the said land to Laura Holmes; and the jury shall further believe that the plaintiff has at all times been and still is ready to reconvey to said Laura Holmes said land, and that defendant had refused to pay said money before this suit was begun, then the jury should find for the plaintiff, and assess his damages at the amount of said one thousand dollars, and interest thereon at six per cent. per annum from the date of said last agreement, and also in addition thereto such further sum as the improvement made and work done on said land by plaintiff was worth, if anything, to the defendant. And if the jury find for the plaintiff upon the issues submitted in this instruction they will also return a verdict against defendant upon the issues raised upon the counterclaim submitted in another instruction."

"5. The court instructs the jury that if they believe from the evidence that the plaintiff and the defendant by agreement declared the contract for the sale of the lands off, then the defendant is not entitled to recover anything on her counterclaim."

The court gave the instruction number 5, as asked, but refused to give instructions numbered 2, 3 and 4, and gave instruction number 1, modified as above:

The defendant requested the court to give, and the court gave, the following instructions:

"1. The court instructs the jury, that the title to the land mentioned in the petition and contract therewith filed, is good as against the objection thereto alleged in plaintiff's petition, and you will so consider it in determining this case.

"2. The court instructs you that the objections set out in plaintiffs' petition did not constitute defects in the title of defendant's property, and if you believe from the evidence that the written contract in evidence was continued in force by the mutual consent and agreement of the parties thereto, until April 1, 1888, and thereafter treated as in force until some time prior to the last of August, 1888, and that while said contract was so in force, the defendant tendered to the plaintiff the warranty deed introduced in evidence by her, and plaintiff refused to receive or accept the same, and you further believe from the evidence that the market value of said property on April 1, 1888, and thereafter until August, 1888, was less than the balance of the unpaid purchase price thereof, to-wit: Less than the sum of forty-three thousand dollars ($43,000), then you will find for the defendant on the second counterclaim in her answer. And if you so find, you will assess her damages at a sum equal to one-half of the difference between the balance of the unpaid purchase price of said property, to-wit: Forty-three thousand dollars, and the market value of the property on the first day of April, 1888.

"3. Even if you find from the evidence that the plaintiff and defendant agreed to abandon the contract read in evidence, yet if you further find from the evidence that it was a part of said agreement that plaintiff should reconvey the interest of her daughter, Laura Holmes, in the property mentioned in said contract,

and that he failed or refused to do so, or to tender to defendant a deed therefor, then you cannot find for plaintiff unless you further believe that defendant either expressly or by her conduct waived the tender of the deed.

"4. In order to constitute a waiver or a tender of a deed the defendant must have expressly stated to plaintiff that she would not receive such deed if tendered, or she must have been guilty of such acts or conduct, or be in such mind within the knowledge of the plaintiff as would lead a prudent man, under the same or similar circumstances, to believe that she would have accepted such deed if tendered, and have complied with her part of such contract without being sued; and if you find from the evidence that no express refusal was made, and that defendant was not guilty of such acts or conduct, or lack of disposition to comply with such contract within the knowledge of the plaintiff, then you will find that no tender of such deed was made and that there is no valid excuse for such want of tender.

"5. The court instructs the jury that the burden of proof of establishing that the original written contract for the sale of the lands in question had been cancelled and annulled prior to the bringing of this suit, is upon the plaintiff, and unless you believe from the fair preponderance of the credible evidence that said contract was canceled and annulled, then your verdict should be for the defendant, upon the cause of action stated in the petition."

To which action of the court in giving such instructions the plaintiff duly excepted.

The court also, upon its own motion, gave the following instructions:

"1. The jury are instructed to return a verdict for the plaintiff upon the issues raised upon the 'first

count' of defendant's counterclaim, no matter what verdict they may render upon the other issues submitted.

"2. The court instructs the jury that either the plaintiff or the defendant is entitled to your verdict, and you are instructed that if you find for the plaintiff, the amount of his recovery cannot be reduced below the amount found due plaintiff, if anything under instruction number 1, read to you by the attorney of the plaintiff; and in the event that you find for the plaintiff, the amount of his recovery cannot be reduced below the amount found due plaintiff, if anything, under instruction number 1, read to you by the attorney of the plaintiff; and in the event that you find for the plaintiff upon this instruction your form of verdict will be herewith 'number one,' except the amount of plaintiff's recovery, which is left for you to insert in such form.

"3. If the jury find for the defendant upon the issues submitted in instruction number 2, read to you by counsel for defendant, then your form of verdict will be herewith given as 'number 2,' except as to the amount, which is left for you to state; but the amount of defendant's recovery is not to be reduced by the fact that such form of verdict allows no sum to the plaintiff."

The jury, under the instructions of the court, as above given, found a verdict for the defendant, and found for her on her second counterclaim in the sum of five thousand (5,000) dollars.

The defendant voluntarily remitted the $5,000 before the motion for new trial was determined. Plaintiff filed a motion for new trial assigning sixteen grounds therefor. This was overruled, and he appeals.

The appellant relies upon the following grounds for the reversal of this case:

*First.* The court committed error in holding the title offered by the respondent as shown by the abstract on file, such a good and marketable title as the law required the sellers to furnish in order to entitle them to specifically enforce the contract, or keep the $1,000 paid as a forfeit, and, consequently, the court erred in refusing to give instruction number 2, asked by appellant, and in giving instructions, numbered 1, 2 and 5, asked by respondent.

*Second.* The question of tender of a quitclaim deed from appellant to Laura Holmes, raised by the court at the trial, was not presented by the pleadings or evidence in the cause, and the court, therefore, erred in giving instructions numbered 3 and 4, asked by the respondent.

*Third.* That the instructions given by the court were otherwise misleading and confusing to the jury, and the court erred in not granting a new trial to the appellant on that ground.

*Fourth.* That the evidence shows conclusively that the trade or contract had been declared off and abandoned by all the parties long before the bringing of this suit, and, therefore, the court erred in not sustaining appellant's motion for a new trial.

I. The position of the appellant in this case is that it was not enough for Mrs. Holmes to tender him a title which she could defend in ejectment, or which a court of equity would vest in her as against all prior owners and their heirs, upon a proper bill, but he was entitled to a marketable title to the land for which he bargained or he could reject it and recover his earnest money.

In *Mastin v. Grimes*, 88 Mo. 478, this court quoted with approval the text of Waterman on Specific Performance, sec. 412, as follows: "Every purchaser of land has a right to demand a title which shall protect

him from anxiety, lest annoying, if not successful, suits, be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." This statement of the law commends itself at once to our reason. The only difficulty we apprehend is in its application.

The circuit court held in this case that Mrs. Holmes' title was good and plaintiff was not entitled to recover his earnest money on account of a defect in the title, and this ruling is assigned as the principal error.

Plaintiff and his counsel base their main objections to the title upon the report of the commissioners in partition in the suit for the division of the real estate of Jones Lockridge in 1839 and 1840.

It is not open to doubt that the commissioners filed a plat with their report, from which, as well as from this report, it most clearly appears that they intended to allot to Thomas Lockridge and each of his brothers and sisters *seventy-two acres of land*. It is, we think, important to bear this in mind. They report that they did allot to each child seventy-two acres; and they attempt to describe the same by metes and bounds.

It is plain that they divided the land into tracts of seventy-two acres each, and then assigned one share to each heir. As each heir was entitled to an undivided one-fifth it was their duty to give each one-fifth, and as there was just three hundred and sixty acres to divide, it is impossible to shut our eyes to the intention to give each his or her seventy-two acres.

Mitchner v. Holmes.

It is conceded by both parties that the beginning point in the report of the metes and bounds to Thomas Lockridge's share as alloted to him, must be an error, or the plat is incorrect. They differ in this. The plat allots Thomas seventy-two acres immediately south of and adjoining the seventy-two acres of John. The plat is consistent with the decree of the court. By giving each heir the land described as his share on the plat, he receives his share without any conflict with the others, and *all the land* of their father is divided among them, but if we adhere to the words of the report alone, we must convict the commissioners of making and the court of approving a partition that *left undivided* a tract of ten to fifteen acres in the heart of this farm without any reason whatever for so doing. It is incredible that any three sensible men should intentionally leave a tract of such a shape in such a portion of the tract, *undivided*, when the decree expressly commanded them to partition it, without assigning some urgent reason therefor; and it is even more incredible and unreasonable that they should have overlooked it when it was their special business to divide it; but we must come to the conclusion that they either intentionally violated the decree and refused to assign this tract without any reason, or that they were exceedingly careless in overlooking it, if we accept plaintiff's construction of the report; but when we are driven to a result so much at variance with reason and common sense it is our duty to see if there is not an explanation that can be given that will accord, both, with reason, and the justice of the case.

By reference to the decree approving the report, and which is the final judgment, it will be observed that the *report alone is not approved, but the report and plat,* so that the plat is given as much signifiance by

the court as the report. It then being apparent that
by the plat all the land was divided and that it took it
all to give each his seventy-two acres and the exact
measurement of each is indicated, we see at once why
interested parties and the court looking at the map
would be satisfied and misled without following the
metes and bounds in a writing exceedingly difficult,
even now, to read. That the plat was shown the court,
the record leaves no doubt. Unquestionably the court
and parties supposed the written report conformed to
the plat, by which each share was clearly pointed
out.

The law is well settled in this state that when a
deed or will refers to another instrument for descrip-
tion, such description becomes as much a part of the
deed or will as if written out at length in the latter
instrument. *Agan v. Shannon*, 103 Mo. 661; *Brownlee
v. Arnold*, 60 Mo. 79; *Lincoln v. Thompson*, 75 Mo.
*loc. cit.* 637; and the same considerations make the rule
peculiarly applicable to decrees of the courts, referring
to the files. Applying this principle then we have two
descriptions of the share alloted to Thomas Lockridge,
one in the report, by metes and bounds, the other in
the plat. The former is inconsistent with a reasonable
hypothesis, the latter entirely consistent with justice
and all the facts. In such a case, nothing is more
common than to apply the maxim, *"Falsa demonstratio
non nocet,"* *Cooley v. Warren*, 53 Mo. 166; *Ruther-
ford v. Tracey*, 48 Mo. 325.

All that is necessary here is to *reject the first false
call, to-wit, the starting point* in the report. When we
do this, and start where the plat starts, the share of
Thomas Lockridge, at the southeast corner of the land
allotted to John H., the brother, in the order of the
report itself, all possible discrepancy disappears, and
the report and plat and decree can all stand together,

part of each other. *Cragin v. Powell*, 128 U. S. 691; *Goltermann v. Schiermeyer*, 111 Mo. 404; *Agan v. Shannon*, 103 Mo. 661; *West v. Bretelle*, 115 Mo. 653.

And in such a case this could be done in an action at law without resort to equity. This court in *Thomson v. Thomson*, 115 Mo. 56, *even supplied an omitted call in an action of ejectment*. When it is considered that this decree was entered over fifty years ago, and no brother or sister of Thomas Lockridge, or any of their heirs have ever laid claim to this land, so far as this record discloses, nor even defended any of the actions brought to correct this mistake, we are prepared to say that no reasonable objection could be made to the title on this account. It follows that the circuit court committed no error in holding that the first and second objections of plaintiff made in their letter to Thayer, and in his petition in this case, did not point out any material defects in defendant's title.

II. This brings us to the objection that the proceedings of Mrs. Simpson, the curatrix of Laura Holmes, described her as *guardian instead of curatrix.*

The order of the court of November 18, 1886, shows that Mrs. Simpson on the petition of Mrs. Holmes was appointed *curator* of Laura Holmes and required to give $20,000 bond, and that she filed her bond as *curator* and it was approved. Her petition for sale describes her as guardian of the person and *estate* of Laura Holmes. The record at other places styles her guardian, but the record C, page 237, February 24, 1888, recites that, "now comes *said* curator or guardian and submits her report of sale," etc., which was approved. This was the crowning act in a judicial sale. We cannot view this objection as any other than extremely technical. As suggested by the learned

counsel of plaintiff, this could *easily* be corrected in the probate court. *If never corrected,* it would not affect the title to the land. A court of justice cannot look with favor upon an objection so wanting in substantial merit as this.

III. The remaining demand was an indemnifying bond against possible appeals by the heirs of Thomas Lockridge and Joseph Journey, to whom Lockridge sold. If we are right in what we have said, neither the heirs of Jones or Thomas Lockridge had a shadow of claim to this land, and it was not necessary to give such a bond as to them.

The objection as to Journey's heirs grows out of the record *of the acknowledgment,* of the deed from Joseph Journey to Robert Hudgens. The acknowledgment was taken July 28, 1866, before a notary public of Jackson county, Missouri, who certifies that Joseph Journey, who was personally known to him to be the same person whose name is subscribed to said deed, that day appeared before him and acknowledged the same. The attestation is:

"Given under hand.          OLIVER RAY,
                      "Notary Public."

The point was made by plaintiff's counsel, that this acknowledgment was defective, because the notary public failed to fix his seal to the certificate of acknowledgment. In their letter of April 14, 1888, the counsel say in regard to the objection, "it is merely technical," and "they will not insist on it" further than to ask a bond of indemnity.

In *Dale v. Wright,* 57 Mo. 110, the notary failed to express in his certificate that he had affixed his seal, and this court, speaking through Judge Vories, held that, where a seal is actually affixed to the instrument, no reciting expressive of the sealing is required, the seal in such case is sufficient in itself, and in

recording it the recorder could only indicate the place or situation of the seal, but that the record of the deed was nevertheless good, and entitled it to be read in evidence without further proof.

In *Geary v. Kansas City*, 61 Mo. 378, the attestation by the clerk recited the seal was affixed, but there was no seal on the record and no *locus sigilli* or scrawl noted, but it was held that the certificate justified the court in presuming the seal was affixed; that it was not necessary for the recorder to copy the seal or note the place where it was placed on the original. *Parkinson v. Caplinger*, 65 Mo. 290.

In *Jones v. Martin*, 16 Cal. 165, the recorder not only omitted the seal, but placed the words "no seal" to a certificate purporting to be under the hand and official seal of a notary, and it was still held sufficient. *Equitable Mortgage Co. v. Kempner*, 19 S. W. Rep. 358. In this case the certificate of acknowledgment is regular, save that no seal appears.

Under this state of case, two presumptions in favor of the regularity of official conduct can be indulged. *First.* It was the duty of the notary public to affix his seal to his certificate of acknowledgment, and the record is simply silent, with nothing ro rebut the presumption. Revised Statutes, sec. 2403, 1889. *Second.* This instrument was admitted to record by the recorder and by law only those instruments which are proved or acknowledged and *certified in* the manner prescribed by law, are entitled to be recorded. *Owen v. Baker*, 101 Mo. 407.

With these presumptions in favor of this record and the decisions of this court sustaining the validity of the deed, the objection was exceedingly technical, but to meet the objection an action was brought against the heirs of Journey to divest any supposed title left in them. James H. Lucas had married one of Journey's

daughters, who had since died, leaving three children. Lucas and these children were non-residents, and they were served by publication and process outside of this state. The objection was narrowed to these four, and it was asserted the service was not good. No authorities are cited to sustain this contention. It is simply assumed that the action is one to quiet title under section 2092 of Revised Statutes, 1889.

An examination of the petition very clearly shows that it was a bill in equity to remove an apparent cloud on the title and not a statutory proceeding to quiet title. This action being a suit in equity to establish a right to property within the jurisdiction of the circuit court of Jackson county, and the defendants being non-residents, it was competent to serve them by publication, and we see and are furnished with no reason why those proceedings are not binding on James H. Lucas and his children, who were thus notified as to this land.

Our conclusion is that the title of Mrs. Holmes and her daughter was good and marketable, and the objections thereto were not well taken, and it must follow that under the original contract plaintiff could not recover the earnest money paid.

This brings us to a consideration of the allegation in the petition that the contract was mutually abandoned and declared off, and the promise of defendant to refund to plaintiff the cash paid out by him, and defendant's counterclaim.

The first instruction given was just as plaintiff asked it, save that the court very properly added that if the jury found for plaintiff on the facts they must find against defendant on her counterclaim. How this modification could have injured plaintiff we are at a loss to see. This instruction was all that was necessary from plaintiff's standpoint to secure a recovery.

Mitchner v. Holmes.

The second, in so far as it declared the title was not such a title as the contract required, was properly refused, and numbers 3 and 4 were rendered unnecessary by the giving of number 1.

There was no error in those given for defendant. If she did not voluntarily abandon the contract and agree to refund the earnest money, there was evidence to sustain both the breach of the contract by plaintiff in refusing the title and substantial loss in the depreciation of the property. These were questions of fact for the jury under proper instructions, and there is no such a want of evidence as will justify this court in setting aside the verdict.

The petition commingled two inconsistent causes of action in one count. No demurrer or motion to elect was made, and the cause was tried on both. The evidence was correctly interpreted by the court to allow plaintiff a recovery alone on the theory that the contract was mutually abandoned, and that defendant had promised to refund the money. Plaintiff was bound to prove this, and we do not think there was any substantial error in permitting defendant to prove that her promise was conditional, and that plaintiff had never complied with the conditions. Plaintiff obtained exceedingly favorable instructions as to the outlays he had made. There was nothing in the original contract that authorized him to make these outlays and look to defendant for remuneration, nor did his petition count on such a right. Altogether we think he had a fair trial and is in no position to complain of the court, because the jury found against him.

The judgment is affirmed. All of this division concur.