No. 2360.

A. WARDLOW ET AL. v. C. B. MILLER ET AL.

1. HEIRS—DESCENT AND DISTRIBUTION.—Under the civil law in force in Texas in 1836 the brothers and sisters of the full blood and children of brothers or sisters of a deceased brother or sister of the full blood inherited the estate to the exclusion of brothers or sisters of the half blood.

2. GRANT.—A grant of land by the Republic of Texas to the heirs of one who fell at the Fannin massacre, enured to the benefit of such only as were heirs under the laws in force at the time of the death.

3. PAROL PARTITION.—A parol partition of land is valid when a wife, having an interest in land, gave her consent in a written instrument, joined by her husband, to a partition thereof, accepted the land allotted to her and clearly manifested by her acts, an intention not to avoid the partition: the fact that the written instrument was not signed in the manner regulating the conveyance of the property of married women was immaterial.

4. MISTAKE—PARTITION—NOTICE.—A purchaser claiming under a voluntary partition is not affected by a mistake made by one of the parties thereto as to the extent of his interest in the property partitioned, though the facts recited in the paper, which evidences the partition, may show that such party was entitled to a larger interest in the land than he consented to receive. The purchaser, while chargeable with notice that the party had received less than his share, would not be charged with notice as to whether the party was mistaken as to his legal rights.

APPEAL from Ellis. Tried below before the Hon. Sam R. Frost.

*A. A. Kemble,* for appellants : That partition of land may be made by parol, and by a femme covert without separate acknowledgment, cited 59 Texas, Sowers v. Peterson, 216 ; 44 Texas, Dement v. Williams, 158; 17 Texas, Stewart v. Baker, 420; 20 California, 637; Freeman on Cotenancy, sec. 398; 1 Johnson's Chancery, 512-515; 2 Johnson's Chancery, Lyon et al v. Richmond et al, 51; 6 Johnson's Chancery, Stone v. Brooks, 169; 1 Peters, U. S., Hunt v. Rousmanier, 15; 8 Wheaton, U. S., 211; 10 Id., U. S., 179-195.

That neither ignorance nor mistake of law can give relief when unmixed with ignorance or mistake of fact, he cited 1 Story's Equity Jurisprudence, secs. 116, 120, to 138b; 2 Kent,

665, 666, and note at bottom of 667; 1 Peters, U. S., 14, 15; 10 Wheaton, 179-195; 1 Johnson's Chancery, 515; 2 Johnson's Chancery, 51; 6 Johnson's Chancery, 169; 20 California, 637.

Leake & Henry, for appellant Fuller : That the deed of trust and the trustee's deed to Fuller vested the legal title to the estate in the appellant ; and appellee's cause of action, if any she had, was in equity, and she could not recover without doing equity by paying off the mortgage debt, they cited Duty v. Graham, 12 Texas, 427; Jacobs v. McClintock, 53 Texas, 80; Cook v. Bremond, 27 Texas, 457; Reece v. Allan, 10 Illinois, 239; Graham v. Anderson, 42 Illinois, 514, 516; 2 Wasburne on Real Property, 78; Fogerty v. Sawyer, 23 California, 570.

B. D. Tarleton and G. C. Groce for appellees.

WILLIE, CHIEF JUSTICE.  Mrs. C. B. Miller and her husband, T. K. Miller, brought this action of trespass to try title against the appellants to recover an undivided half interest in twelve hundred and eighty acres of land, part of a nineteen hundred and twenty acre tract granted as bounty to the heirs of Orlando Wheeler, who fell at Goliad in the Fannin massacre.  Orlando Wheeler at his death was a single man, and left no heirs in either the descending or ascending line.  He left, however, collateral relatives as follows:  Two brothers, Olin H. Wheeler and Richard M. Wheeler, who were of the whole blood, and the appellee, Mrs. Miller, who was a daughter of a brother of the whole blood who had died before the death of Orlando Wheeler; also the following brothers and sisters of the half blood; Robert J. Wheeler, William Wheeler, Catharine Wheeler, Jane Wheeler and Mrs. Bacon.  Olin H. Wheeler, of the full blood, died in 1840 or 1841, leaving neither wife nor children.

It seems that the heirs of Orlando Wheeler had also received a grant of six hundred and forty acres of land in Ellis county as donation, and a headright of a league and labor located in Hill county.  The total amount granted them by the State was seventy-one hundred and sixty-five acres, of which one-third went to locators. Prior to 1873, William P. Anderson purchased the interest in these lands held by R. M. Wheeler, a brother of the whole blood to Orlando; and of three of the half blood stock, viz., Robert J. Wheeler, Mrs. Moody and Mrs. Bacon.  Subsequently he purchased the interest of the heirs of William Wheeler, another

half brother. All the appellants except Wardlow claim under Anderson. It was shown that a partition was made between Anderson, the heirs of the deceased William Wheeler, the appellees and the Sylvesters, who were the heirs of Catharine, one of the half sisters of Orlando Wheeler. In this partition one McCulloch represented Anderson and the heirs of William Wheeler, and one Dukes represented the other partitioners. Two-thirds of the Orlando Wheeler lands, except locative interests and some that had been previously disposed of, was assigned to the constituents of McCulloch, and was conveyed to them by Dukes; and one-third to the constituents of Dukes, which was conveyed to them by McCulloch. This was in 1873. In 1874, the appellees and the Sylvester heirs partitioned between themselves by deed. In this partition the appellees signed an instrument in which they transferred to the Sylvester heirs four hundred and twenty-six acres out of the tract in controversy, which had been assigned to the appellees in the previous partition. The Sylvester heirs conveyed to Mrs. Miller the interests set apart to them in the previous partition, except two hundred and fifty acres of the league and labor survey, the proceeds of which were divided, two-thirds to the appellees and one-third to the Sylvesters. Anderson claimed by purchase the interest of the heirs of William Wheeler, and sold the same to the appellants, except Wardlow, who claimed by purchase from the Sylvesters four hundred and twenty-six acres of the tract in dispute. The power of attorney from Mrs. Miller to Dukes to make partition and title was not signed by her husband, and was not acknowledged by her as required by statute. She attempted to ratify his act by a subsequent instrument, but this, too, had the same defects in signing and acknowledgment. The transaction between Mrs. Miller and her husband on the one part and the Sylvesters on the other was signed by herself and husband, but not properly acknowledged.

Mrs. Miller and her husband took possession in 1876 of the lands set apart to her out of Wheeler's headright and afterwards sold it. She also obtained the benefit of the purchase money of the land sold before partition.

The defendants pleaded not guilty; purchase without notice of Mrs. Miller's claim and payment of purchase money; improvements in good faith, etc. The judge to whom the cause was submitted held in substance that under the Spanish law collaterals of the whole blood inherited to the exclusion of those

of the half blood; that Mrs. Miller signed the instruments of partition under the mistaken idea that the half blood collaterals inherited half as much as those of the whole blood; that she was not estopped from still claiming her full share of Orlando Wheeler's estate, having committed no fraud in making the partition; and that the defendants; through recitals in the partition deeds and other instruments under which they claim, were charged with notice of her legal rights, and the extent of her interest as an heir of Orlando Wheeler, and were not innocent purchasers. Judgment was rendered for Mrs. Miller for one third of the land sued for as heir of Orlando Wheeler, and two-ninths of one-third as heir of Oliver H. Wheeler less the actual interest of the Sylvesters in the tract directly in suit allowing defendants for improvements, etc. This case comes before us on appeal from this judgment.

By the civil law in force in Texas at the death of Orlando Wheeler, his brothers of the full blood, and Mrs. Miller, a daughter of a deceased brother, also of the full blood, were entitled to inherit his estate to the exclusion of brothers and sisters of the half blood. (2 Demot Civ. Law, sec. 2929; Schmidt's Law of Spain and Mexico, p. 265, sec. 5.)

The several grants to the heirs of Orlando Wheeler enured, of course, to the benefit of such persons as were heirs according to the law in force at the time of his death, and not to those entitled to inherit under the laws of descent and distribution in force at the time the grants were made. (Goodrich v. O'Connor, 52 Texas, 375.) It was made to appear from the evidence of Mrs. Miller and her husband that, at the time of making the partition, they were mistaken as to the interests of the former in the estate of Orlando Wheeler. They supposed that the collaterals of the half blood were entitled to inherit half as much as those of the whole blood, or they would not have consented to a division of the lands upon that basis.

In the view we take of the case, it will not be necessary for us to determine whether this mistake was such as would be relieved against by a court of equity in a proper state of case; but we will consider whether, under the facts developed in this suit, the appellees were entitled to relief as against purchasers from the parties who had taken part with Mrs. Miller and her husband in the partition.

That a parol partition of lands is valid in our State is now fully settled. It is upheld, not so much upon the ground of

estoppel as because there is nothing in our statutes of frauds that prohibits a conveyance by parol of an interest in real estate. Tenants in common hold an interest in the entire land to which their cotenancy extends, but neither owns any particular portion of it to the exclusion of his cotenants. To partition the land so as to give to each an exclusive ownership of a designated portion in severalty, is for each to surrender his interest in the partition allotted to the others. This release of interest is considered by our courts not to be a conveyance of lands within the meaning of the statutes of frauds. (Stewart v. Baker, 17 Texas, 420; Gibbons v. Bell, 45 Texas, 423; Shannon v. Taylor, 16 Texas, 413, Johnson v. Johnson, 65 Texas, 87.)

Such a partition is upheld under certain circumstances, where the rights of minors or married women are involved. In George v. Thomas, 16 Texas, 74, a parol partition was enforced against persons claiming under a married woman, when no unfairness was shown, and she acquiesced in it, and her husband assented to the division. There the wife gave no consent directly to the partition, but was represented by her husband. The court lay much stress upon the fact that she afterwards recognized the partition, by dividing with her daughter the share allotted to them in the transaction. There were other circumstances mentioned by the court, but it is evident that these were, in its opinion, the important facts going to sustain the partition.

In the present case it was shown that both husband and wife consented to the division of the property. This they state themselves. The consent given by the wife in writing was not binding on her as a conveyance. But it did not lessen the force of what was done by parol. One deed had her signature to it, and the other she affirmed after it was made. Neither was so signed as to meet the statute regulating the conveyance of the property of married women, but they were both sufficient to show that she knew of the partition without disapproving it. Moreover, she accepted the lands allotted to her, took possession of them and sold them to other parties. She also divided with her cotenants the lands received by them in the former partition. She accepted a portion of the money received for lands previously sold; in fact, did everything that could be done to manifest an intention not to avoid the partition made with her cotenants. It seems clear, therefore, that if this partition had not been made upon a misapprehension of Mrs. Miller's legal rights; if, in fact, the half brothers and sisters of Orlando

Wheeler had been entitled to half as much of his property as were those of the whole blood, she could not have avoided the partition merely for the reason that she had not signed the instruments alluded to, and acknowledged them as required by law in case of conveyances by married women.

The question that remains is, Does the fact that she made a valid partition under a mistake of her legal rights in the land vitiate it as to subsequent purchasers from the parties with whom she made the division? This depends upon whether they had notice of the fact that she made the division under such mistake, and would not have consented to it had she been aware of her legal rights.

If they had such notice it was derived from the papers by which the partition was effected, and the facts of which these papers would put them upon inquiry. The papers showed upon their face that Mrs. Miller was partitioning lands of which she and her copartitioners were seized in common. In the deed between McCulloch and Dukes, acting for their respective constituents nothing is said about the heirship of the parties to Orlando Miller. They were merely dividing their interest in his property. In the deed between the Millers and the Sylvesters this heirship is mentioned. Admitting that it was referred to in both deeds, this did not show that she consented to the partition through mistake of her rights. It showed that she did not claim her full interest, but not that she failed to do so through a mistake as to its extent.

She might have had full knowledge that she was entitled to a fraction more than she claimed in the estate divided, and yet have been willing to divide on the basis stated in the papers. The purchaser was bound to know that she could have claimed more in the partition, but he was not charged with knowledge that she did not intend to surrender that claim in making the partition. That was something not apparent on the face of the papers, nor were they calculated to raise an inquiry upon the subject. The natural result of the transaction as it appeared to one not acquainted with the facts surrounding it, was that the several co-tenants intended an amicable settlement of their interests in the land upon the basis of two-thirds to the heirs represented by McCulloch and one-third to those represented by Dukes. That this was not the intention of Mrs. Miller was known to herself and husband, but the purchaser could not be

charged with notice of it, as there was nothing in the partition which required them to investigate her secret motives.

The case is wholly different from one where the purchase money of a tract of land has not been paid. The mere recital of this fact put subsequent purchasers upon notice, because they are charged with the knowledge that the legal effect of a non-payment is to create a vendor's lien. But suppose the deed recites a receipt of the purchase money when in fact it has not been paid. The vendor can still insist upon his lien against his immediate vendee, but subsequent purchasers get title free of the incumbrance. The vendee may show that he was mistaken in saying the money had been paid; but the purchasers can reply that although he may have been so mistaken, his own acts and declarations were such as to lead others to believe that he had given the receipt with full knowledge that the money had not been paid. So in this case Mrs. Miller was actually mistaken as to her interests in the land. She, however, agreed to partition it and to receive one-third, setting forth that third by metes and bounds. She did not say that she did so under a mistake of her interests in the land, but merely agreed to receive certain specified portions of land in settlement of the supposed one-third interest in the whole.

If purchasers claiming under a partition are to be charged with notice of the mistakes and secret intentions of the parties thereto merely because the partition deeds show that some of the parties claimed less than the law allowed them, the titles to property would, to a great extent, become unsettled. It would be incumbent upon every purchaser to search for the various parties to the division and inquire of them what motive they had in not insisting upon their rights; and, if they were not to be found he would hold his title at the mercy of of such parties, their heirs and purchasers under them until protected by the statute of limitations.

The theory of the appellees' case is that Mrs. Miller was not bound to know the law governing her heirship to Wheeler's estate, but that the appellants were; and not only so, but were bound to know the fact that she was acting in ignorance of the law in this respect. And further, that they must take notice that she could not have acted as she did but for such ignorance; though this does not appear from the face of the partition papers; though it is not unreasonable that she should have divided as she did, though her interest was greater than is mentioned

in the instruments of partition; and though she has enjoyed and disposed of the share received by her in the partition, and her every act in reference to the property since she received her share, down to the bringing of this suit, has evidenced an acquiescence in the terms of the partition. We do not think that this theory can be supported, and the court below, in sustaining it, committed an error for which the judgment must be reversed. We should not hesitate to render a judgment here for the defendants, if the evidence showed satisfactorily that the appellants had paid a valuable consideration for the land claimed by them. The evidence is silent on this subject, but both parties and the district judge have treated the appellants as purchasers for value. There are cases in which purchasers are protected against the equities of third parties, though they do not show payment of such consideration. (McAlpine v. Burnett, 23 Texas, 649.) Whether this is such a case or not we need not determine, as the fact, if it exists, can be easily proved upon another trial.

The judgment will therefore be reversed and the cause remanded for a new trial, in accordance with the views expressed in this opinion.

*Reversed and remanded.*

Opinion delivered December 20, 1887.