ADAMS v. ADAMS et al.   (No. 128.)

(Court of Civil Appeals of Texas.   Beaumont.
Nov. 16, 1916.   On Motion for Re-
hearing, Dec. 14, 1916.)

1. PARTITION ☞94(1) — RECORD — NUNC PRO
TUNC ENTRY—DEFENSE.

Where the report of commissioners appoint-
ed by the probate court to partition and distrib-
ute land was not recorded as directed by law,
the filing and recordation of the report under
a nunc pro tunc order secured nearly 50 years
after the report was made did not add any legal
force to the action theretofore had in the pro-
bate court.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 287–293; Dec. Dig. ☞94(1).]

2. PARTITION ☞5—IRREGULARITIES—RATIFI-
CATION.

In an action of trespass to try title, evidence
*held* to show that a partition of the land by
commissioners appointed by the probate court
nearly 50 years before, irregular because the
commissioner's report was not filed and record-
ed as required by law, has been recognized and
ratified by the interested parties by deeds and
acts of ownership.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 13–17; Dec. Dig. ☞5.]

3. PARTITION ☞5—DEFECTIVE PROCEEDINGS
—EFFECT OF RATIFICATION.

Where the interested parties for nearly 50
years recognized and ratified partition of land
irregular because the report of the commis-
sioners appointed by the probate court was not
filed and recorded as required by law, such con-
duct on their part established the equivalent of
an oral partition of the land.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 13–17; Dec. Dig. ☞5.]

4. PARTITION ☞5 — ORAL PARTITION — EVI-
DENCE.

In an action of trespass to try title, where
it was shown that the interested parties had
by recognition and ratification of a partition
of the land by the probate court, irregular be-
cause of a defect in the proceedings, established
the equivalent of an oral partition, the proceed-
ings of the probate court may be examined in
connection with such conduct of the parties as
evidence of such oral partition.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 13–17; Dec. Dig. ☞5.]

5. PARTITION ☞5—COLLATERAL ATTACK.

Where the interested parties had by recogni-
tion and ratification of a defective partition
made by the probate court established the equiv-
alent of an oral partition, such proceedings of
the probate court and actions of the parties
are not, after nearly 50 years, subject to collat-
eral attack.

[Ed. Note.—For other cases, see Partition,
Cent. Dig. §§ 13–17; Dec. Dig. ☞5.]

Appeal from District Court, Jasper Coun-
ty; A. E. Davis, Judge.

Action by W. W. Adams and another
against W. J. B. Adams.  Judgment for the
plaintiffs, and defendant appeals.  Reversed
and rendered.

H. C. Howell, of Jasper, for appellant.
Powell & Huffman, of Jasper, for appellees.

MIDDLEBROOK, J.  This was an action
of trespass to try title to a tract of 587 acres
of land, a part of the Stephen H. Everitt

league in Jasper county, the original suit
being filed by W. W. Adams as sole plaintiff
against W. J. B. Adams, and afterwards R.
F. Seastrunk, under leave of the court, made
himself coplaintiff with W. W. Adams.  Un-
der the amended pleadings W. W. Adams
claimed a one-fourth undivided interest and
R. F. Seastrunk an undivided one-fourth in-
terest in the 587 acres of land originally
sued for by W. W. Adams.  The defense pre-
sented by W. J. B. Adams was a plea of not
guilty.  The trial was before the court with-
out a jury, and judgment was rendered in
favor of the plaintiffs against the defendant
for an undivided one-half of the 587 acres of
land, and for all costs of suit, from which
judgment proper appeal is perfected to this
court.

The material issues for determination by
this court, as the case is presented, are:
First, the validity and force of a partition of
1,644 acres of land between Adam Adams and
the estate of S. S. Adams, deceased, made by
commissioners appointed by the probate court
of Jasper county at the December term, 1865,
which commission made its report to the pro-
bate court of Jasper county on March 5,
1866; and, second, if said partition was not
in all things a regular partition of said land,
have the interested parties, since said parti-
tion, by their acts confirmed the partition of
said land, in accordance with the report of
the commissioners appointed by the court to
partition the land?

There are a number of assignments of er-
ror by the appellant, but, as we understand
the record in this case, all of the vital is-
sues in the case hinge on the propositions
above set forth.

It is agreed that the common source of ti-
tle is Abel Adams.  On May 2, 1857, Abel
Adams conveyed the 1,644 acres of land to
his two sons, S. S. Adams and Adam Adams.
S. S. Adams died some time in 1862 or 1863,
and his estate was administered through the
probate court of Jasper county, Tex., the in-
ventory having been filed on the 29th day of
December, 1863, in which inventory a one-
half undivided interest in the 1,644-acre tract
is included.  In December, 1865, partition
proceedings were instituted in the probate
court of Jasper county to divide the 1,644
acres of land between the estate of S. S.
Adams, deceased, and Adam Adams, and W.
H. Kyle, E. White, and J. B. Rogers were
appointed by the court to partition said land.
The record shows that the application for the
partition was made by W. F. Holloman and
his wife, Sallie Holloman.  Sallie Holloman's
first husband was S. S. Adams.  At the
March term of the probate court of Jasper
county the commissioners appointed to par-
tition and distribute said land made the fol-
lowing report to the probate court:

"Estate of S. S. Adams, Dec'd.  G. W. Smyth,
Administrator.   Probate Court Holding Ses-

sion in and for Jasper County, Texas, March Term, A. D. 1866. To the Honorable Probate Court, Holding Session in and for Jasper County, Aforesaid:

"The undersigned commissioner's duly appointed by your honorable court at, to wit, the December term, A. D. 1865, to divide a certain tract of land between the estate of S. S. Adams and Adam Adams, a part owner, would most respectfully make the following report, to wit: That 575 acres of said land as per plot No. 3, including all improvements, shall belong to the estate of S. S. Adams, it being on the north

end of the lot sold by Abel Adams to S. S. Adams and Adam Adams, and 525 acres (lot No. 2,) together with lot No. 1, containing 544 acres of land, more or less, shall belong to the said Adam Adams, and is considered a fair and equal division between the said estate of S. S. Adams, deceased, and the said Adam Adams, a part owner of said lands.　　W. W. Kyle.
　　　　　　　　　　　　　"E. White.
　　　　　　　　　　　　　"J. B. Rogers.
"Subscribed and sworn to before me this 5th day of March, 1866. M. C. Moulton, Notary Public J. C. Texas. [Seal.]"

Indorsed:

"Estate of S. S. Adams, Report of Partition Between Said Estate and Adam Adams, by Commissioners W. H. Kyle, E. White & J. B. Rogers. Filed March 20th, 1866, H. Good, Clk. Co. Ct. J. C."

Also indorsed:

"The within report of commissioners for partition having been neglected, it is now ordered to be recorded in the minits of the court Feby. 22nd, A. D. 1869. Andw. F. Smyth, County Judge Jasper County."

Also indorsed:

"Refiled this the 20th day of Dec., 1915, A. L. Mays, C. C. C. J. C."

Which report, as is shown by the indorsements thereon, was not recorded in the minutes of the probate court of Jasper county, as the law at that time directed in such matters.

[1] It is to be noted that this report was refiled on the 26th day of December, 1915, and the undisputed facts show that it has been recorded in the minutes of the probate court of Jasper county under an order which is termed a nunc pro tunc order of the probate court, secured by counsel for appellant during vacation, without any notice to the adverse parties, and after this suit was filed. We do not think that this late filing and recordation of the report added any legal force to the action theretofore had in the probate

court of Jasper county, Tex., and deem it unnecessary to comment further upon that particular issue.

In 1857 S. S. Adams took charge of and made improvements upon a part of the original 1,644-acre tract of land, having built negro houses, and opened up a farm upon a part of the land. W. F. Holloman and his wife, Sallie Holloman (née Mrs. S. S. Adams), after they married, lived upon and cultivated that part of the land theretofore improved by S. S. Adams, according to the testimony, from six to ten years.

In 1866 Wm. M. Neyland was appointed administrator de bonis non of the estate of S. S. Adams, deceased, and on the 22d day of June, 1866, inventory and appraisement was filed in the probate court of Jasper county by said administrator of said S. S. Adams' estate, and this inventory and appraisement includes the 375 acres of land set apart and distributed to the estate of S. S. Adams, deceased, i. e., Sallie Holloman and W. F. Holloman, which tract of land is appraised at $1,000. The probate court also entered an order setting apart the homestead for the surviving widow and children of S. S. Adams, deceased, consisting of 200 acres of land, including the farm of the deceased, and also allowed $400 for the support of the minor children of said deceased, and giving the widow and children the use and benefit of the exempt property. At the March term, 1867, of the probate court of Jasper county an order was entered authorizing the said administrator of the S. S. Adams' estate to sell the property belonging to the estate, both real and personal, on a credit of 12 months, for the purpose of paying the debts of said estate, and under said order the administrator, among other things, sold 375 acres of the original 575 acres set apart to S. S. Adams to one M. Middleton, at 80 cents per acre, for $500, according to his report to the probate court, which was approved and decree entered accordingly on the 27th day of May, 1867.

On the 17th day of November, 1875, W. F. Holloman and his wife, S. E. Holloman (formerly Mrs. S. S. Adams), conveyed by proper deed the 200 acres which was set aside as the homestead to A. H. Alley for $1,000 in gold, $500 of which was in cash, and the remainder in gold, vendor's lien notes. This deed was filed for record in the deed records of Jasper county on February 8, 1876.

On the 11th day of November, 1878, W. W. Adams, the original plaintiff in this case, conveyed by proper deed all of his right, title, and interest in and to the 200 acres of land to A. H. Alley for the sum of $398.

There are numerous conveyances introduced in evidence in this case showing conclusively that all of the parties originally interested in the 1,644 acres of land had recognized the partition of the 1,644 acres of land

as made in the report of Kyle, White, and Rogers on the 5th day of March, 1866, and these conveyances are so numerous that we deem it unnecessary to set them out in this statement; there being no dispute or contention as to the actions of the parties to the transactions.

On January 22, 1866, a deed was made by Adam Adams to W. J. B. Adams purporting to convey an undivided one-half interest in a tract of 1,800 acres of the Everett league, and on the 12th day of February, 1868, a deed was made by Adam Adams to W. J. B. Adams for an undivided one-half of the 1,644-acre tract of land conveyed to Adam Adams and Samuel S. Adams by Abel Adams. The undisputed evidence shows that at the time these conveyances were made Adam Adams was in an insolvent condition, on the verge of bankruptcy, and that these deeds were made in order to try to save something for Adam Adams in the winding up of his affairs in bankruptcy. The undisputed evidence also shows that no consideration whatever was paid by W. J. B. Adams to Adam Adams on these conveyances, and W. J. B. Adams disclaims any title whatever to any of the lands conveyed by those deeds; in short, they were accommodation matters, right or wrong, between two kinsmen, and, we think, have no bearing whatever as to a proper disposition of this case. See Hudson v. Jurnigan, 39 Tex. 585.

Many of the conveyances heretofore spoken of, but not set out herein, which we think show conclusively that the interested parties to this suit acquiesced in and acted upon the report of the commissioners of the probate court of Jasper county, Tex., dividing the land in controversy between Adam Adams and the estate of S. S. Adams, deceased, refer back to the partition and distribution of the 1,644 acres of land to the estate of S. S. Adams, deceased, and Adam Adams, showing conclusively that said partition was known, recognized, and acted upon by the Adams, the Hollomans, and the later grantees and grantors of portions of the 1,644-acre tract of land.

On the 11th day of May, 1900, Adam Adams conveyed to W. J. B. Adams the "544 acres, more or less, the same being a part of the Stephen H. Everett league situated in the county of Jasper and state of Texas; said tract being the same that was set apart to Abel Adams on the 25th day of February, 1856, in the partition of a tract of 3,288 acres of said land between the said Abel Adams and the estate of Stephen H. Everett, deceased, and the same that was set and the same that was set apart to me, the said Adam Adams, on the 5th day of March, 1866, in the partition of a tract of 1,644 ——— of said league between myself, the said Adam Adams and the estate of Samuel S. Adams, deceased," then giving a description by metes and bounds of the 544-acre tract of land, which is the tract of land in controversy in this suit.

The consideration shown in this deed is "one dollar and other valuable considerations." W. J. B. Adams, testifying on this point, said that he gave Adam Adams other property which was the same as money for this land, which testimony is undisputed.

W. F. Seastrunk's interest in the suit arises out of a power of attorney from W. W. Adams to him for a one-half undivided interest of W. W. Adams' interest in the 544-acre tract of land; the consideration being Seastrunk's recovering the land for him.

The report of the commissioners of partition partitioning the 1,644 acres of land between the estate of S. S. Adams, deceased, and the said Adam Adams was shown conclusively to have been in the possession of W. J. B. Adams' father at his death. No one knows when it first went into his possession or how came it there. W. J. B. Adams received it from his mother, who turned over to him all of the papers of her deceased husband, and W. J. B. Adams did not know of the existence of the report of the commissioners among such papers until about the time he was considering a purchase of the 544 acres of land which is in controversy. The undisputed evidence shows that he went to his counsel before purchasing this land, and had an examination of the title made, and it would seem that the discrepancy in the record of the report of the commissioners was detected by his counsel, and caused the search which resulted in the finding of the report of the commissioners copied herein among the papers of his father, which had come into his possession some 30 to 31 years ago. After having seen this report, his counsel advised him that it was safe to purchase the 544-acre tract of land, and, acting upon this advice, he purchased the 544 acres.

[2-5] It occurs to us that an unbiased view and consideration of the undisputed facts of this case could lead to but one intelligent conclusion, and that is that the parties to this suit recognized the partition made by the commissioners appointed by the probate court in 1865, acted upon it, and were satisfied with it until foreign blood got into the matter, and thus brought contention between the kinsmen. Therefore it is wholly unnecessary to determine the validity of the probate order.

Remembering that S. S. Adams took charge of a part of the 1,644 acres of land, sent his negroes upon it, made improvements, cleared lands, and so forth, as early as 1857, considering again that the commissioners to partition said land made their report in March, 1866, in which they set aside to the estate of S. S. Adams, the very land upon which he made his improvements, to his once widow, then Mrs. Holloman, and his heirs, in forcible terms tell us that the commissioners, in partitioning said land, took into consideration the rights of S. S. Adams in getting the land that contained his improvements. It is not a violent presumption to presume

that, when S. S. Adams took charge of a part of the land, and went to clearing a farm, he would select the best part of the 1,644-acre tract of land, and there is evidence to support the view that much of the other two tracts was poor land, one tract of it was timbered, but at that time timber was practically worthless, and the reasonable presumption is that the commissioners who partitioned the land took into consideration the value of the 587-acre tract which they set aside to the estate of S. S. Adams, deceased at the time he took charge of it, as compared with the value of the other two tracts which they set aside to Adam Adams.

Again, it occurs to us that but one conclusion could be derived from the acts of Sallie Holloman, née Sallie Adams, and her husband, from the time they moved onto the 587-acre tract of land until they finally sold it, receiving therefor $1,000 in gold, and her son, plaintiff in this case, W. W. Adams, receiving about $400 for his interest in the residue of the 587-acre tract and of the probate court in ordering the sale of the remainder of the 587-acre tract, to wit, 387 acres, together with other property, and that is that S. S. Adams and his heirs fully recognized and acquiesced in the partition of the lands as made by the commissioners, and filed March 5, 1866. If they did so, and surely they did, when they sold the remainder of the 587-acre tract, by their own conveyances, there is no question but what the remaining two tracts, as set aside by the commissioners, belonged to Adam Adams, or to his assigns, because, if a party or parties continuously recognize and acquiesce in the terms and conditions of a partition of lands among themselves, they will not be heard to complain of some omission by the courts in the distribution of such estate, and especially is this true when so long a period of time has elapsed since such partition. It is to be noted that nearly 50 years has elapsed since the partition of the land by the commission, and, as has been stated already, many deeds have been made, and some deeds by all parties concerned, which show that recognition was given to such partition. Lynch v. Baxter, 4 Tex. 431, 51 Am. Dec. 735; Cannon v. Hemphill, 7 Tex. 202; Bartlett v. Cocke, 15 Tex. 479; George v. Thomas, 16 Tex. 89, 67 Am. Dec. 612; Grassmeyer v. Beeson, 18 Tex. 764, 70 Am. Dec. 309; Millican v. Millican, 24 Tex. 439; Hudson v. Jurnigan, 39 Tex. 579; Kleinecke v. Woodward, 42 Tex. 311; Vogelsang v. Dougherty, 46 Tex. 472; Glasscock v. Hughes, 55 Tex. 461; Brackenridge v. Howth, 64 Tex. 192; Delk v. Punchard, 64 Tex. 364; Mitchell v. Allen, 69 Tex. 70, 6 S. W. 745; Wardlaw v. Miller, 69 Tex. 395, 6 S. W. 292; Mitchner v. Holmes, 117 Mo. 185, 22 S. W. 1070; Loring v. Groomer, 110 Mo. 632, 19 S. W. 950. See, also, Baker v. Coe, 20 Tex. 430; Dancy v. Stricklinge, 15 Tex. 557, 65 Am. Dec. 179; Soye v. McCallis-

ter, 18 Tex. 100, 67 Am. Dec. 689; Burdett v. Silsbee, 15 Tex. 604.

Again, we think, under the undisputed facts of this case, the actions of the parties clearly show that the partition was and has been recognized, ratified, and acquiesced in by them for a period of nearly 50 years, and, this being true, such conduct upon their part establishes a parol partition of the land, whether the partition as made by the commissioners, Kyle, White, and Rogers, was in all things legal or not, and, such being true, the proceedings of the probate court may be looked to in connection with such conduct of the parties as evidence of such parol partition or that which is equivalent thereto, and that such proceedings and actions of the parties are not now subject to collateral attack. Evans v. Martin, 6 Tex. Civ. App. 331, 25 S. W. 688; Wardlaw v. Miller, 69 Tex. 395, 6 S. W. 292; Millican v. Millican, 24 Tex. 440; Brackenridge v. Howth, 64 Tex. 190; Delk v. Punchard, 64 Tex. 363; Pearce v. Jackson, 84 Tex. 515, 19 S. W. 690.

There is an assignment of error to the effect that, if the partition of the land, as made by the Commissioners, Kyle, White, and Rogers, in 1866, is not a valid partition, then no partition of the land was ever made, and that therefore the whole tract of land is being held by all parties as tenants in common, under title emanating from and under the estate of S. S. Adams, deceased, and Adam Adams, and that the probate court having heretofore, in 1864, set apart to the family of S. S. Adams, deceased, a tract of 200 acres of land as a homestead, and in 1867 having ordered a sale of the other 375 acres of the 575-acre tract for the benefit of said estate, and afterwards the 200-acre tract having been sold by the widow and her son, W. W. Adams, they having appropriated to themselves the consideration therefor, that neither W. W. Adams nor the said R. F. Seastrunk, who claims under the said Adams, can maintain a suit for recovery of any alleged deficiency in the share or interest in said land represented by the 575 acres that has been received and appropriated by said estate and said W. W. Adams, as the heir of said estate, unless in suit for division and partition of said 1,644 acres of land brought against each and all of the part owners thereof, and in which suit the rights and interests of each and all of such part owners shall be litigated, adjusted, and settled, and involving a surrendering and restoration by plaintiffs for the benefit of other estate, to be partitioned of said 575 acres or the value thereof that has been received and appropriated by the estate of S. S. Adams, deceased, and said W. W. Adams, and therefore the court erred in rendering judgment for the plaintiffs. Appellant cites Pearce v. Jackson, 84 Tex. 515, 19 S. W. 690; McKey v. Welch, 22 Tex. 396; Trammell v. McDade, 29 Tex. 364; Holloway v. McIlhenny Co., 77 Tex. 659, 14 S. W. 240.

Under our view and disposition of the case, it is not necessary to pass upon this assignment, nor have we read the authorities cited by appellant.

There are some additional assignments, but in the final the assignments all go to the two main propositions, as set out in the beginning of the statement of this case, and under our view of the case it is unnecessary to pass upon them singularly, and, as has been hereinbefore indicated, we think the undisputed facts of this case show conclusively that judgment should have been rendered in favor of the defendant, W. J. B. Adams, and the facts being full, and, so far as we can see, all that could be introduced under the pleadings of the parties, we think the case should be disposed of in this court, and it is so ordered.

The judgment of the trial court is therefore reversed, and judgment here rendered in favor of the defendant, W. J. B. Adams, for the land in controversy, and that the plaintiffs take nothing by this suit, and that all costs be charged to the plaintiffs.

Reversed and rendered.

### On Motion for Rehearing.

In appellees' motion for rehearing it is brought to our mind that inadvertently we have confused the different tracts of land in the original opinion in this case, and, such being the case, it is necessary to correct that part of the opinion.

Originally there was a 1,644-acre tract of land, and it was divided into three different lots or parcels, numbered 1, 2, and 3. Lot No. 1 is the lot in controversy, and was said to contain 544 acres. Lot No. 2 contained 575 acres, and lot No. 3 was the parcel of land upon which S. S. Adams settled, and out of which afterwards was apportioned by the probate court the 200-acre homestead, and the remaining 375 acres were sold to pay the debts of S. S. Adams, and, as stated in the original opinion, Mrs. W. F. Holloman, née Mrs. S. S. Adams, and her son, conveyed the 200-acre homestead. A survey of lot No. 1, originally stated to contain 544 acres, showed that it contained, in reality, 587 acres. In the original opinion the writer speaks of this tract being the original homestead tract of 587 acres, when he meant to have spoken of the 575-acre tract as the homestead tract of S. S. Adams, and in the opinion he states that after the homestead of 200 acres was set aside to Mrs. S. S. Adams the remaining 387 acres were sold to pay the debts of S. S. Adams, deceased.

The opinion should have read, where it refers to that tract of land, 575 acres, and not 587 acres, and where it says 387 acres were sold, it should say 375 acres were sold, etc. So that, wherever the expression in said opinion referring to the tract of land in litigation as any other than the original 544-acre tract, which was afterwards found to contain 587 acres, and wherein it refers to the original tract set aside to S. S. Adams, other than as the 575-acre tract, and wherein it refers to the remainder of the homestead tract being sold being 387 acres, is corrected here so as to read, the remaining part of the 575-acre tract, to wit 375 acres, after taking out the 200-acre homestead, was sold to pay the debts of S. S. Adams, deceased,

There was never any confusion as to the disposition of the matter, it being simply a clerical error, by the terms of which the writer of the opinion described the land in controversy as a tract containing a certain number of acres, when in truth and in fact that was not the tract by the number of acres in litigation.

With this correction and explanation, the motion for rehearing is overruled.