### DE RODRIGUEZ et al. v. HINNANT.
### (No. 607–4095.)

(Commission of Appeals of Texas, Section A. Jan. 7, 1925.)

1. Infants ⧆▭100—Evidence held to show that portions of estate allotted to minors on voluntary partition were delivered to them after majority.

In action attacking voluntary partition of an estate, evidence *held* to show that plaintiffs who were minors when partition was made, received their allotted shares in personalty after majority.

2. Infants ⧆▭30(2)—Infant held to have ratified voluntary partition of estate after forty years' possession and acquiescence.

In accepting a fair share under voluntary partition of estate, and acquiescing therein for 40 years, plaintiffs *held* to have ratified it, although minors not legally represented at partition.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Alberta Flores de Rodriguez and another against Robert Hinnant. Judgment for the plaintiffs was reversed in the Court of Civil Appeals (255 S. W. 1000), and plaintiffs bring error. Judgment of Court of Civil Appeals affirmed.

W. W. Winslow and Jno. L. Dannelley, both of Laredo, for plaintiffs in error.

---

Mann, Neel & Mann, of Laredo, for defendant in error.

GERMAN, P. J. The land in controversy is a part of what is known as Las Animas, situate partly in Webb county and partly in Jim Hogg county, containing 2,128 acres. Plaintiffs in error Alberta Flores de Rodriguez and Crisanta Flores de Galvan are children and heirs of Pedro Flores, Sr., who died June 15, 1881, leaving his wife and nine children surviving him. At that time Alberta and Crisanta were minors, being 16 and 13 years of age, respectively. Pedro Flores, Sr., at the time of his death lived in Mexico and owned lands and property there. He also owned considerable lands and property in Texas, including the land in controversy. On December 8, 1881, the widow and heirs of Pedro Flores, Sr., made a voluntary partition of the lands and property situated in Texas, executing ten inventories, one containing description of the property partioned to the·widow, and the other nine containing description of the property partitioned to the children. In this partition Alberta and Crisanta were represented by Juan M. Flores. There is nothing contained in the record to show that Juan M. Flores had any authority to represent the minors. The value of all property in Texas at the time of the partition was $11,243.37, of which the widow received about one-half. The interest of Alberta and Crisanta amounted to $584, and there was given to each of them 584 head of sheep, valued at $1 each. This appears to have been a fair and equitable allotment to them at the time. The tract of land in controversy, containing 2,128 acres, was given to Pedro Flores, Jr., and Jose Maria Flores.

As we view this case it is unnecessary to notice but one question. Plaintiffs in error are claiming their interest in the tract of land mentioned as heirs of their father, Pedro Flores, Sr., on the ground that they did not sign the partition agreement and did not authorize Juan M. Flores to sign for them, and that therefore the same was not binding as to them. If it was not they are entitled to recover, unless their title has been defeated by limitations. It is admittedly not binding on them, except on the theory of acquiescence, and ratification, and this, under the view we have taken of the facts, is the only question to be considered. The trial court made the following finding:

"Plaintiffs Alberta and Crisanta were two of these four children who got no land under this partition. They were each awarded as their share or inheritance of their father's estate in Texas, 584 sheep, of the estimated value of $584, being $1 per head, but the sheep were never delivered to them as their shares in this partition, and they did not know that such partition was made."

Judgment was for plaintiffs in error in the trial court. The Court of Civil Appeals reversed the trial court, and rendered judgment in favor of defendants in error. 255 S. W. 1000. The effect of the holding by the Court of Civil Appeals was this: That the finding of the trial court above set out was not only without evidence to support it, but was directly in conflict with the testimony of plaintiffs in error themselves. An examination of the statement of facts leads us to the opinion that the Court of Civil Appeals was correct.

[1] On this issue plaintiff in error Crisanta Flores de Galvan testified:

"I understand that it is in evidence in the trial of this case that I received 584 head of sheep in the year 1881. I did not receive that number of sheep in that year. I received some sheep after I was married; they were delivered to my husband after I married. I received those sheep then because it was a quantity of animals that my father and mother gave to their children when they got married. * * * Juan M. Flores was a cousin of ours. When I married I received some sheep. Juan M. Flores did not deliver those sheep to me; they were in possession of Mr. Jose Maria Garcia, and he delivered them; he delivered them to me by orders of my mother. You say that I knew that in the division of my father's estate in 1881 and 1883 there was 584 sheep set aside to me. I say I knew that after I was married when they delivered them to me. * * * I was about thirteen years old at the time that division was made. My mother took charge of my share until I was big enough to attend to it myself. * * * I got those sheep after I was married. I do not remember who delivered them to my husband, because he went to receive them, but the man that had them was Don Jose Maria Garcia. My father was not living then; he had died in 1881. My mother had received those sheep at the time they were set aside to me, and Mr. Jose Maria had them."

Plaintiff in error Alberta Flores de Rodrigues testified:

"My father died in 1881. I was 16 years old at the time my father died. I am not certain just how long it was after my father's death we had the partition. We did not all get together and agree on a division of the property my father left; we were young, we could not do that. The older ones did that. It may have been that my older brothers represented me in that division, if any one did. It is not a fact that I was married at the time of that division. I just told you that I was married in 1882; I was 16 years old at the time. When they had that division of the property I did not receive my part of the property that my father left; I did not receive anything from my father. * * * That affair in Mexico was a different thing altogether. They divided it over there in equal parts. The division over in Mexico did not divide the property in Texas also; it was not the same. I do not remember anything about receiving in the partition that was had of the property, some 449 hectares of land near Guerrero, Mexico, as a part of the property coming to me as an heir of my father. I do not remember about me and my husband selling and disposing of that land some time after my father's death—I believe not. The property I received in that division at the time was a lot

.and some sheep. I got five hundred and some sheep, I do not remember the exact number. Since refreshing my memory on it now, *it was 584 sheep that I got.*"

Among other things the trial court found:

"The property in Mexico of said community estate was partitioned according to the laws of that country in April, 1883. It was assumed that a legal and just partition of the property in Texas had been made under the laws of Texas on December 8, 1881, and such small differences as existed in the estimated values of the shares of the Texas property awarded to the heirs in the manner shown above were taken into consideration in partitioning the property in Mexico. All were satisfied with what they received as their share of the Mexican property."

Alberta Flores was married at the time of the partition of property in Mexico, April 3, 1883. The inventory of the property received by her was duly recorded in Mexico. It awards to her a tract of land and certain notes and personal property, *but no sheep.* It contains the following statement:

"Adjudication will be made of the import of the estate she has already received in Texas, as per inventory of probate issued at Carrizo of the said state, dated 8th December, 1881, $584.00."

Inventory of the property in Mexico received by Crisanta Flores in the partition of April 3, 1883, shows that she received a tract of land and numerous notes, *but no sheep.* It also contains a statement similar to that quoted above about property already received in Texas of the value of $584.

There can be no misunderstanding of the testimony of Crisanta Flores. She declares that her mother received her share of the sheep "at the time they were set aside to me," and they were, after her marriage, delivered to her by Jose Maria Garcia. In view of this statement it is wholly immaterial that she was still a minor at the time of making the second inventory. It seems to us also that there is no uncertainty about the testimony of Alberta Flores. It is true she stated that "when they had the division of the property I did not receive my part," but this does not mean that she did not receive it at a later date. She does declare that she received 584 sheep, which was the number set aside to her. Clearly she intended to convey the idea that she did not receive the sheep at the date of the partition, but did receive them (as in the case of her sister) after her marriage. This construction of her testimony will leave her statements without contradiction. Besides, she was married and

under no disability when the second inventory was made, which acknowledged receipt of Texas property valued at $584, and she appears to have fully adopted this inventory. The testimony of these parties could not relate to sheep given to them in the second partition, for the inventories show that they received no sheep then. It may be true that they received some sheep by way of marriage settlement, but we think their statements leave no doubt that they also received the 584 head of sheep set apart to them in the partition of December 8, 1881.

[2] It is not disputed that Pedro Flores, Jr., and Jose Maria Flores accepted the tract of land in controversy as a part of their interest in the estate, that they took possession of it, and have made conveyances and dealt with it as their own. Although the plaintiffs in error were under disability at the time of the partition, and were represented by one without authority, yet, having accepted the portion of the estate set aside to them, which was fair and equitable at the time, and having acquiesced in the division for forty years, they must be held to have ratified the partition, and will not be permitted to recover any part of the land in the hands of those who bought it for a valuable consideration and in reliance upon the validity of the partition. Wardlow v. Miller, 69 Tex., 395, 6 S. W. 292; Adams v. Adams (Tex. Civ. App.) 191 S. W. 717 (writ refused); Millican, v. Millican, 24 Tex. 440.

If this were a question depending upon the credibility of witnesses or the weight of testimony, we would not, of course, interfere with the finding upon this issue made by the trial court if there was evidence to sustain it. But this is not the case. The only testimony upon this issue was that of the plaintiffs in error, and the question is one of the proper construction of that testimony. We have undertaken to harmonize all their statements. To adopt the finding made by the trial court will result in certain of their statements being in conflict with other statements by them, thus making all their testimony subject to suspicion.

The conclusion we have reached on this phase of the case makes it unnecessary for us to consider the question of limitation. However, we do not wish to be understood as in any way approving the holding of the Court of Civil Appeals on that question.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.