ESTATE of Jackie White EBERLING et al., Appellants,

v.

J. Roll FAIR et al., Appellees.

No. 19037.

Court of Civil Appeals of Texas, Dallas.

Dec. 13, 1976.

Rehearing Denied Jan. 27, 1977.

330

John R. Feather, Feather & Kessler, Dallas, for appellant.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, for appellee.

GUITTARD, Justice.

This suit began as an action to establish an undivided interest in 177 acres of land and for partition. Before trial, counsel for all parties attempted to settle the controversy and to that end exchanged four letters. Defendants, however, refused to recognize the letters as a binding settlement. Plaintiffs then amended their petition, alleged that the four letters constituted a binding agreement, and prayed for a declaration of rights. Plaintiffs also filed a motion for partial summary judgment, which the trial court granted, reserving for jury trial issues concerning the effect of one aspect of the agreement. After trial and verdict on these issues, the court rendered judgment for plaintiffs enforcing the agreement as interpreted by the verdict. Defendants appeal. We hold that the four letters do not constitute a binding contract because essential terms are not agreed on, and for like reasons, we hold that they are unenforceable as a memorandum in writing to satisfy the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01(b)(4) (Vernon 1968).

The four letters are as follows, with our captions and emphasis added:

### (1) *Defendants to Plaintiffs,*
### *April 22, 1974*

In order to settle the captioned litigation, I am authorized to commit to the ownership of a total of an undivided ⅖th interest by your clients, J. Roll Fair and Roy R. Fair, Jr., in the real estate which is the subject of the captioned litigation, *if they will exercise one of the following options in writing within the period of fifteen (15) days* following the date of this letter:

1. J. Roll Fair and Roy R. Fair, Jr., together, may specify a dollar value per acre for the subject land and my client will have the option to either buy the ⅖th interest from or sell the ⅞th interest to your clients at the dollar value specified, OR

2. *Your clients may elect to buy the ⅞th interest or sell the ⅖th interest and my client will specify the dollar value at which they will buy or sell.*

In either instance the party setting the value per acre will be firmly obligated to buy from or sell to the other party depending upon the election of the other party at the elected value.

Please let me have your clients' election or a response declining this offer at your earliest convenience.

### (2) *Plaintiffs to Defendants,*
### *May 6, 1974*

I am writing on behalf of my clients, the two *plaintiffs* in the above styled matter pending in the 95th District Court, Roy R. Fair, Jr., and J. Roll Fair, to *accept on their behalf the second option proposed* by you in your letter dated April 22, 1974.

Your letter of that date listed two options for settling the above styled litigation in full. The second option in your letter is as follows:

2. Your clients may elect to buy the ⅞th interest or sell the ⅖th interest and my client will specify the dollar value at which they will buy or sell.

It is this option which my clients are accepting as to the land in litigation, that being 177 acres in Dallas County, Texas, near Seagoville, which property is described in full in Plaintiffs' First Amended Petition on file and which is also described in Exhibit A attached to this letter of acceptance.

With the acceptance by my clients, your client will now specify the dollar value of the 177 acre tract and my clients will then have the option * of either buying out your client's interest for an amount of money equal to ⅞th of the total value of the property as set by your client, or to sell their interest to your client for an amount of money equal to ⅖ th of the total value of the property as set by your client.

\* Please advise me as to the length of time my clients will have to make their decision. If you think it reasonable, I would suggest 30 days.

### EXHIBIT A

(Description by metes and bounds.)

### (3) *Defendant to Plaintiffs, July 17, 1974*

On behalf of my client in the captioned matter, pursuant to the procedures instituted by my letter to you of April 22, 1974, *I will place a value on the subject tract of $750.00 per acre.*

*Your letter to me of May 6, 1974, described the land as 177 acres. This area should be reduced by a sufficient area to accommodate the house which is situated partially on the subject tract.*

In order to complete the contemplated transaction, *please have your clients make their election to buy or sell within twenty (20) days* from the date of this letter and advise me in writing of their election.

Within fifteen (15) days from the date of your advice to me mentioned in the preceding paragraph, we will close this transaction by the seller executing a special warranty deed conveying to the purchaser the appropriate interest under our arrangement and the purchaser shall pay to the seller, in cash or certified funds, the appropriate purchase price calculated by using $750.00 per acre times the total area (less the portion agreed upon to accommodate the house) times the appropriate fraction (⅔ths or ⅞ths as the case may be).

When the conveyance and payment of the purchase price described in the preceding paragraph are completed, the pending litigation should be dismissed with prejudice as to all parties.

### (4) *Plaintiffs to Defendants, August 1, 1974*

Reference is made to your letter of July 17, 1974, wherein a value on the tract of land involved in the above styled and numbered suit was set by your client at $750 per acre.

Within the time provided by the terms of that letter this is to advise that my clients, *the plaintiffs, elect to buy the property at the $750 per acre price.*

In your letter of July 17, 1974, you refer for the first time to a reduction of the 177 acres ' * * * by a sufficient

area to accommodate the house which is situated partially on the subject tract.'

In order to give recognition to the ⅔ths interest owned by the plaintiffs in the full 177 acres and at the same time 'accommodate the house' owned by the defendants, the plaintiffs should receive ⅔ths of $750 times the numbers of acres agreed upon to 'accommodate the house.' Thereafter, that number of acres shall be subtracted from the 177 total acres and the resulting figure multiplied by $750 per acre times ⅞ths. I am sure this is what you meant in your letter when you said 'accommodate' since it would be the only reasonable and fair way in which to set aside part of the total acreage for the house.

*I have tried to reach you by telephone in order to discuss with you the amount of land necessary 'to accommodate the house'* but have not been successful in reaching you as of the time of the writing of this letter. Upon receipt of the letter please *call me so that we can discuss this and a survey of the appropriate strip* in order for a title policy to be given the purchasers in conjunction with the special warranty deed.

Please provide me with the name of the grantor so that I can begin preparation of the deed.

I would also like to discuss with you the closing of the transaction as referred to in your letter of July 17, 1974, both as to time and to place.

Immediately upon the closing I will cause the above styled and numbered suit to be dismissed with prejudice.

The problem arises from the second paragraph of the third letter, in which, for the first time, defendants propose that the land specified in the previous letter should be "reduced by a sufficient area to accommodate the house." The evidence shows that the house in question was located partly on the 177-acre tract and partly on other land owned by defendants and not involved in the suit. Although plaintiffs agreed in the fourth letter that an exception should be made for this purpose, the parties have

never come to an agreement concerning the exact area or location of the land to be excepted.

The trial court attempted to resolve this matter by granting a partial summary judgment declaring the contract binding and submitting to the jury special issues to determine the size and location of "a sufficient area to accommodate the house." These issues and the jury's answers are as follows:

Special Issue No. 1: Find from a preponderance of the evidence the size or dimensions of that portion of the 177 acre tract sufficient to reasonably accommodate that portion of the house in question which is situated on said tract:

You are instructed that your answer shall be any one of the following:

(1) The area shaded in pencil on plaintiff's Exhibit No. 37;

(2) The area outlined in red on defendants' Exhibit No. 3;

(3) The fenced area now situated around said house;

(4) The number of feet projected at right angles from the foundation of the house on the front, back and side.

Let the form of your answer be either (1), (2), (3), or (4).

Answer: (4)

If you have answered (4), then state the distance in feet from the foundation of the house on the following sides:

Front: 1,391 feet

Back: 200 feet

Side: 200 feet.

Based on this verdict, judgment was rendered declaring the contract to be binding and further declaring:

[T]hat the portion of the 177 acre tract sufficient to reasonably accommodate that portion of the house in question which is partially situated on said tract of 177 acres is so much of said tract of 177 acres that is included in a rectangle described as and being of the following dimensions: 200 feet projected at a right angle from the foundation of the house on the back, 200 feet projected at a right

angle from the foundation of the house on the side, and 1391 feet projected at a right angle from the foundation of the house on the front.

■■■■ Defendants contend on this appeal that the judgment is erroneous because the contract was not complete in its essential terms and that the omission was not cured by leaving to the jury the definition of "a sufficient area to accommodate the house." We agree.

Plaintiffs argue that to be enforceable the contract need only be reasonably certain and that a fair reading of the letters shows that the parties agreed to a reduction from the original 177-acre tract within meaningful and legally enforceable limits, which the jury merely interpreted and applied. We cannot accept this theory. In our view, the contract does not have the requisite certainty, either as a matter of contract law or as a matter of the sufficiency of the writing to satisfy the Statute of Frauds. Under contract law, a contract, whether written or oral, must define its essential terms with sufficient precision to enable the court to determine the obligations of the parties. *Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614, 616 (1962); *Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 941 (1944).

This principle was applied to a land identification problem in *National Resort Communities, Inc. v. Cain,* 526 S.W.2d 510, 514 (Tex.1975) in which a contract concerning the sale of lake lots was held not subject to equitable reformation because the lots were not sufficiently identified by the oral agreement. Likewise, in *Smith v. Griffin,* 131 Tex. 509, 116 S.W.2d 1064 (1938), an oral agreement alleged to be outside the Statute of Frauds because of part performance was held to be insufficient to identify the land because, although the agreement described the land as two acres in rectangular form and specified the beginning corner and two of the boundaries, an indefinite number of rectangular tracts containing two acres could have been constructed in accordance with the agreement. In the present case,

the description of the excepted tract is even more indefinite, since not even the area is specified. Determination of "a sufficient area to accommodate the house" may vary indefinitely according to the subjective judgment of the person making the determination, as may also the boundaries of the excepted tract. These possible variations are exemplified by the differing positions of the parties at the trial, as well as by the alternatives submitted to the jury, all of which were consistent with the language of the agreement.

Moreover, the language of the letters suggests that the parties did not regard the expression "a sufficient area to accommodate the house" as adequately identifying the excepted tract. In the fourth letter plaintiffs' counsel requests that defendants' counsel contact him to discuss the amount of land to be excepted and also a survey of the excepted tract. Thus it is clear that further negotiations were contemplated but that these negotiations were not successful in producing an agreement concerning the identity of the land to be excepted. It is well settled that courts cannot make contracts for the parties and that an agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced. *Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472, 474 (1937); *Miller v. Vaughn & Taylor Construction Co.,* 345 S.W.2d 852 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.). Likewise, although courts are reluctant to hold a contract void for uncertainty, they have no authority to interpolate terms of material consequence in order to uphold it. *Dahlberg v. Holden,* 150 Tex. 179, 238 S.W.2d 699, 701 (1951). Consequently, in this case, the trial court had no authority to ask the jury to supply an essential term in the contract, which the parties were unable to complete by mutual agreement.

The same result follows if the letters are considered from the standpoint of a written agreement or memorandum under the Statute of Frauds, Tex.Bus. & Comm. Code Ann. § 26.01(b)(4) (Vernon 1968). The test of sufficiency under the statute is whether the writing furnishes within itself or by reference to some other existing writing the means or data by which the particular land to be conveyed may be identified with reasonable certainty. Resort cannot be had to extrinsic evidence for the purpose of supplying the location or description of the land, but may be had only for the purpose of identifying it with reasonable certainty from the data in the memorandum. *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945). By this standard, extrinsic evidence would not have been proper to show an oral agreement identifying the excepted tract, and certainly no such evidence was proper for the purpose of enabling the jury to determine for the parties what they failed to determine for themselves by agreement. Our analysis of the uncertainty of the contract with respect to the size and location of the "area sufficient to accommodate the house" is applicable also to the matter of sufficiency of the written description under the Statute of Frauds.

Plaintiffs contend further that the agreement should be enforced as an oral partition, which may be considered as not within the Statute of Frauds on the theory that a partition is not a conveyance of land but merely a division of previously undivided interests. *See Aycock v. Kimbrough,* 71 Tex. 330, 12 S.W. 71, 72 (1887).[1] This argument is untenable because, as we have already held, even apart from the Statute of Frauds, the four letters do not contain the essential elements of a binding contract, and plaintiffs do not allege an oral agreement sufficiently identifying the land. Moreover, the agreement contained in the letters, as interpreted by the trial court, constitutes more than a partition. It does

---

1. *But see Wardlow v. Miller,* 69 Tex. 395, 399, 6 S.W. 292, 294 (1887), in which an oral partition was sustained on the ground that the Statute of Frauds does not prohibit a parol conveyance of

an interest in real estate. This holding apparently ignores the statute of conveyances, the predecessor of Tex.Rev.Civ.Stat.Ann. art. 1288 (Vernon 1962).

not purport merely to divide the 177-acre tract between the parties in accordance with their previously undivided interests. It purports to be an executory contract whereby plaintiffs agree to "buy" and defendants agree to "sell," for a stated consideration in money, all of defendants' interest in the entire 177-acre tract, except an insufficiently defined area around the house. Clearly, this is a "contract for the sale of real estate" within the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01(b)(4) (Vernon 1968), and in the absence of a proper written description of the excepted tract or written data which, if applied to the land, would identify the excepted tract with reasonable certainty, the agreement cannot be judicially enforced.

We recognize that in the cases cited by plaintiffs, the theory of oral partition has been applied to situations in which the cotenants owned both land and personal property and, by agreement, all of the land was allotted to one or more of the cotenants. *See Houston Oil Co. v. Kirkindall,* 136 Tex. 103, 145 S.W.2d 1074, 1077 (1941); *Murrell v. Mandlebaum,* 85 Tex. 22, 19 S.W. 880, 882 (1892).[2] These cases, and the theory of oral partition as well, have been criticized on the ground that the cotenant actually receives additional title to the segregated tract and also the exclusive right of possession, which he did not have before. Comment, *Misconceptions of Parol Partitions in Texas in Light of Statute of Frauds Requirements,* 23 Baylor L.Rev. 75, 78, 95 (1971). The supreme court has not gone so far, however, as to apply the theory of oral partition to a situation in which one cotenant has simply bought the interest of the other by paying his own individual funds.[3] Thus, in *Zanderson v. Sullivan,* 91 Tex. 499, 502, 44 S.W.

484, 485 (1898), where two adjoining lots were owned in common but one was more valuable because of its corner location, an oral agreement for one cotenant to take the corner lot and pay $1,000 for the difference in value was held to be a contract of sale within the Statute of Frauds.

■ Plaintiffs concede that the transaction contemplated by the letters was a sale of land insofar as it involved the conveyance, for a monetary consideration, of an undivided seven-ninths interest, but they assert that since the entire 177-acre tract is sufficiently described in the letters, segregation of the excepted area from the land to be conveyed was a "partition," which is not required to be in writing. This argument is untenable because the uncertainty in the size and location of the area to be excepted leaves uncertain the area to be conveyed. The letters do not provide for conveyance of the entire 177 acres less a defined undivided interest that may subsequently be located and partitioned. Since the interest to be excepted is insufficiently described, so also is the interest to be conveyed. Consequently, under general principles of contract law, as well as the Statute of Frauds, the agreement cannot be enforced.

Our holding on this point is supported by *Stekoll Petroleum Co. v. Hamilton,* 152 Tex. 182, 255 S.W.2d 187, 192 (1953), which concerned an option to acquire mineral leases on 4,000 acres out of a certain 5,000-acre block. The contract provided that the buyer might select the 4,000 acres, "leaving Seller 1,000 acres equitably checker-boarded in a fashion similar to the checker-boarding in the first block above identified." The supreme court held that this language left

---

2. In *Murrell* the land was a partnership asset, and the division between the partners may be sustained on the theory of equitable conversion. Comment, *Misconceptions of Parol Partitions in Texas in Light of Statute of Frauds, Requirements,* 23 Baylor L.Rev. 75, 77 (1971). The opinion indicates, however, that the supreme court was not content to rest its decision on that theory since it expressly invoked the doctrine of oral partition.

3. Plaintiffs cite *Loston v. Loston,* 424 S.W.2d 316 (Tex.Civ.App.—Houston [14th District] 1968, writ dism'd), in which the court enforced an oral agreement providing that a husband should pay to his wife on their divorce one-half of the appraised value of the homestead in settlement of her property rights. This case may be understood as a division of community assets rather than a sale, and thus as not extending the holdings in *Kirkindall* and *Murrell,* *supra.*

indefinite and uncertain the land to be reserved to the seller, and also, consequently, the land to be acquired by the buyer. Likewise, in *Perry v. Connelly,* 462 S.W.2d 383 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.), a lease of a building and an adjoining parking area was held too indefinite for enforcement because of reservation by lessor of the right "to cut off a portion of the northwest corner of the building for ingress and egress to the north side of the building." The reservation in the present case of "a sufficient area to accommodate the house" is no more definite than the reservations in these two cases.

On oral argument plaintiffs raised the contention, which we do not find in their brief, that the first two letters establish a binding contract because the second letter was an unqualified acceptance of the first, and that if the subsequent modification with respect to the land around the house fails because of lack of identification of the excepted tract, the original contract is evidenced by the first two letters is still enforceable. According to this theory, plaintiffs argue that only the exception fails for lack of a definite description and that the contract is otherwise enforceable. Thus, plaintiffs urge that defendants have no standing to complain of the court's action in giving them the benefit of an exception, which, though poorly described, they would not be entitled to insist upon under their own original proposal accepted by plaintiffs.

We cannot accept this theory because plaintiffs did not attempt in their amended petition or in their motion for summary judgment to enforce the contract embodied in the first two letters alone. Whether plaintiffs would have been entitled to relief on this theory is a question we need not decide since it is not before us. The partial summary judgment rendered by the trial court was based on the ground, which we hold to be erroneous, that the four letters constituted a binding contract and that the uncertainty in defining the area excepted was a matter to be resolved by the jury. Since we conclude that the judgment based on that theory cannot stand, we reverse and remand for a new trial.

Reversed and remanded.

CLAUDE WILLIAMS, C. J., not sitting.